

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-1998

# Foulk v. Donjon Marine Co Inc

Precedential or Non-Precedential:

Docket 97-5235

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Foulk v. Donjon Marine Co Inc" (1998). *1998 Decisions.* Paper 107.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/107

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 11, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-5235 & 97-5269

LAYNE B. FOULK; MARJORIE E. FOULK, h/w

v.

DONJON MARINE COMPANY, INC.,
        Defendant/Third-Party
        Plaintiff

v.

BREAKWATERS INTERNATIONAL, INC.,
        Third-Party Defendant
        Donjon Marine Company,
        Inc.,
        Appellant in 97-5235.
        Layne B. Foulk;
        Marjorie E. Foulk,
        Appellants in 97-5269.

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 95-cv-00323

Argued on December 12, 1997

Before: GREENBERG, ROTH and SEITZ, Circuit Judges

(Opinion filed: May 11, 1998)

David B. Winkler, Esquire
Marvin I. Barish Law Offices
Sixth & Walnut Streets
The Curtis Center, Suite 801
Philadelphia, PA 19106
 Attorney for Foulks

Raymond R. Wiss, Esquire (Argued)
Thomas K. Bouregy, Jr., Esquire
Wiss & Cooke
Three University Plaza
Suite 207
Hackensack, NJ 07602
 Attorneys for Donjon Marine
 Company, Inc.

Edward R. Murphy, Esquire
Elizabeth A. Dalberth, Esquire
Murphy & O'Connor
65 Haddon Avenue
Haddonfield, NJ 08033

Gary S. Lee, Esquire (Argued)
Thomas R. Beer, Esquire
Barger & Wolen
500 Fifth Avenue
46th Floor
New York, NY 10110
 Attorneys for Breakwaters
 International, Inc.

OPINION OF THE COURT

ROTH, Circuit Judge:

This interlocutory appeal involves two questions:
1) whether we have jurisdiction of it, and 2) whether an individual is precluded from being a "seaman" for purposes of the Jones Act, 46 U.S.C.  668, if his relationship with a barge/diving station in question is only 10 days in duration. On the first issue, we will deny appellee/third-party defendant, Breakwaters International, Inc.'s, motion to dismiss the appeal. We find that the pleadings and

2

actions of the parties were sufficient to invoke admiralty jurisdiction for purposes of Fed. R. Civ. P. 9(h). We, therefore, have jurisdiction of this appeal of a non-final order under 28 U.S.C.  1292(a)(3). On the second issue, the district court held that Layne Foulk, a freelance commercial diver, had insufficient durational connections to the barge to be considered a "seaman" covered by the Jones Act. Foulk v. Donjon Marine Co, Inc., 961 F. Supp. 692, 698 (D.N.J. 1997). We do not agree and will reverse.

I. Facts

In April 1993, the Borough of Avalon, New Jersey, contracted with Breakwaters to erect an artificial reef off Avalon's coast. Breakwaters contracted with Donjon to provide material, barges, tugs, and a floating crane barge. Breakwaters hired freelance divers, including Foulk, to perform some of the work. Construction began on July 10, 1993, under Breakwaters' direction. Donjon's crane barge, the Farrell 256, anchored 150 feet offshore, was used both to install the reef and as a dive station for the dive crew, consisting of Foulk and three other commercial divers who were to assist in the placement of the reef. As dive station, the barge held air compressors, a communications box, and other diving equipment. The dive crew were to sleep ashore and to report to the barge by motor launch each morning. Foulk was hired to work for 10 days, the duration of the project. On his first day of work, Foulk was injured when, while in the water, he was caught between a jetty and the clamshell bucket operated by the barge crane. He suffered various fractures, a collapsed lung and an injured right shoulder.

On January 6, 1995, while on disability, Foulk and his wife, Marjorie, filed suit against Donjon and Breakwaters, sounding in negligence and general maritime law. The Foulks alleged both diversity and admiralty jurisdiction. On February 14, 1995, before any answer was filed, the Foulks amended their complaint to name only Donjon as defendant on claims of negligence and of the unseaworthiness of Donjon's vessel. Jurisdiction was once again grounded in both diversity and admiralty. On March 10, 1995, Donjon filed both an answer and a third-party claim against

Breakwaters for indemnity and contribution. On June 1, 1995, the Magistrate Judge granted Donjon's oral motion to amend its third-party complaint to make a claim against Breakwaters in favor of the Foulks, pursuant to Fed. R. Civ. P. 14(c). Breakwaters did not object to this amendment. The parties subsequently submitted a joint pre-trial order which stated inter alia, that "jurisdiction of the Court arises under the Admiralty Law as modified by the Jones Act, 46 U.S.C. 668." Breakwaters sought partial summary judgment on its contention that Foulk was not a "seaman" under the Jones Act, 46 U.S.C. 688. Donjon and Foulk cross-moved for partial summary judgment that Foulk was a Jones Act "seaman." On April 9, 1997, the District Court granted Breakwaters' motion and denied Donjon and Foulk's motion to the contrary. Foulk v. Donjon Marine Co, Inc., 961 F. Supp. 692, 698 (D.N.J. 1997). Donjon and the Foulks filed notices of interlocutory appeal on April 21, 1997, and April 30, 1997, respectively. 28 U.S.C. 1292(a)(3). On May 9, 1997, Breakwatersfiled a motion to dismiss the appeal. For the reasons set forth below, we will deny Breakwaters motion to dismiss, and, considering the merits of the appeal, we will reverse the district court grant of partial summary judgment in favor of Breakwaters.

## II. Jurisdiction

Before we reach the merits of this appeal, we mustfirst resolve Breakwaters' motion to dismiss it. Donjon asserts that the jurisdictional basis for its interlocutory appeal is 28 U.S.C. 1292(a)(3)1 which provides in part:

> [T]he court of appeals shall have jurisdiction of appeals from:
>
> (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

_____

1. Donjon concedes that 28 U.S.C. 1291 is inapplicable as a basis for jurisdiction because there was no "final judgment" of the district court. Appellant Donjon's Br. in Opp. to Appellee Breakwater's Mot. to Dismiss, at 11; See United States v. Brook Contracting Corp., 759 F.2d 320 (3d Cir. 1985).

To use  1292(a)(3) as a basis for appellate jurisdiction of an interlocutory order, such as a grant of partial summary judgment, a plaintiff must be asserting an admiralty or maritime claim within the meaning of Fed. R. Civ. P. 9(h). This Rule states as follows:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82 and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. . . . The reference in [28 U.S.C.  1292(a)(3)] to admiralty cases shall be construed to mean admiralty and maritime cases within the meaning of this subdivision [Fed. R. Civ. P. 9](h).

(emphasis added).

In both its initial complaint against Breakwaters and Donjon and in its First Amended Complaint against only Donjon, Foulk asserted two bases for subject-matter jurisdiction: admiralty and diversity.[2]  When a federal plaintiff makes a claim in admiralty or joins an admiralty claim with another claim, certain special procedures and rules apply: Rules 14(c), 38(e), 82, the Supplemental Rules

_____

2. The First Complaint states:

> The jurisdiction of this Court arises under the Admiralty law by the
> Jones Act, 46 U.S.C.  688, and the diversity jurisdiction of the Court, 28 U.S.C.  1332, the amount in controversy being in excess of Fifty Thousand Dollars ($50,000.00) exclusive of interest and costs.

Compl. and Jury Demand,  5. The First Amended Complaint states:

> The jurisdiction of this Court arises under the Admiralty law and the diversity jurisdiction of the Court, 28 U.S.C.  1332, the amount in controversy being in excess of Fifty Thousand Dollars ($50,000.00) exclusive of interest and costs.

First Am. Compl. and Jury Demand,  4.

for Certain Admiralty and Maritime Claims, and 28 U.S.C. 1292(a)(3). Rule 9(h) helps clarify the applicability of these admiralty and maritime rules and procedures in a case where more than one basis for subject matter jurisdiction has been asserted. To assist the court and the parties in recognizing the presence of an admiralty claim in a multi-claim suit, Rule 9(h) provides that the complaint "may contain a statement identifying the claim as an admiralty or maritime claim ... ." See Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 73 (3d Cir. 1996).

Breakwaters grounds its motion to dismiss the appeal on the fact that, in asserting admiralty jurisdiction in both the original and the amended complaints, the Foulks do not specifically cite to Rule 9(h) and, as a consequence, do not "identify the pleading as an admiralty claim." For this reason, Breakwaters contends that the Foulks did not invoke admiralty jurisdiction and cannot employ the procedures associated with it, including the use of 28 U.S.C. 1292(a)(3), the jurisdictional basis for this appeal. As a result, Breakwaters asserts that section 1292(a)(3) is inapplicable and that this appeal must be dismissed for lack of jurisdiction.

The issue that we must resolve is how specific a party must be in identifying an admiralty claim in a complaint when that party is pleading alternative theories of subject matter jurisdiction. Generally, under the liberal notice pleading practices in federal civil cases, a claimant "does not have to set out in detail the facts upon which the claim for relief is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim." 2 Moore's Federal Practice, 8.04[1] (Matthew Bender 3d ed. 1988); see Hishon v. King & Spaulding, 467 U.S. 69, 78-79 (1984); Conley v. Gibson, 355 U.S. 41, 47 (1957) (pleading must contain only a short and plain statement sufficient to give notice); Fed. R. Civ. P. 8. Similarly, the claimant must include "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed. R. Civ. P. 8(a)(1). Plaintiff's complaints, see n.2, both clearly stated two jurisdictional bases: diversity and admiralty.

There are, however, embellishments to the Rule 8 notice pleading provisions. One of these is Fed. R. Civ. P. 9(h)

6

which explains that a party in Foulk's position, who has set forth two jurisdictional bases, "may" include a "statement identifying the claim as an admiralty or maritime claim." (emphasis added). By affirmatively including such a statement, a party clearly describes a claim as being one in admiralty. See Advisory Committee Notes, Fed. R. Civ. P. 9, 1966 Amendment ("the preferable solution [for designating a claim as an admiralty claim] is to allow the pleader who now has power to determine procedural consequences by filing a suit in admiralty to exercise that power under unification ... by a simple statement in his pleading to the effect that the claim is an admiralty or maritime claim."); cf. Fedorczyk, 82 F.3d at 73 (stating that "[t]o invoke admiralty jurisdiction ... a plaintiff must affirmatively insert a statement in the pleadings identifying the claim as an `admiralty or maritime claim'.").

A direct citation to Rule 9(h) is unambiguous and may be considered by some to be preferable. See Wright & Miller, Federal Practice and Procedure: Civil 2d   1211 (West 1990); Fed. R. Civ. P. Forms 2(d).3 However, nothing in Rule 9(h) restricts the invocation of admiralty jurisdiction to a specific citation to that rule. Indeed, Rule 9(h)'s use of the word "may," instead of "must," suggests that the specific use of the words "Rule 9(h)" is not required.

We conclude then that a plaintiff, invoking admiralty jurisdiction, does not need to make direct reference to Rule 9(h). The question remains, however, just how specific a reference to admiralty jurisdiction must be in order to invoke it. Our review of the facts of the present case convinces us that the pleadings, along with the parties' actions, are sufficient to invoke it.

_____

3. In fact a number of district courts have so held. See, e.g., Subaru Distributors Corp. v. General Ship Corp., 167 F.R.D. 342, 343 (D. Mass 1996); Lewis v. United States, 812 F.Supp. 620, 628 (E.D. Va. 1993); Siragusa v. Standard Steamship Owners Protection, 710 F.Supp. 404, 407 (D.P.R. 1989); Banks v. Hanover Steamship Corp., 43 F.R.D. 374, 376-7 (D.Md. 1967). By contrast, the Fifth Circuit has held to the contrary, that explicit reference to Fed. R. Civ. P. 9(h) is not necessary.
Teal v. Eagle Fleet, Inc., 933 F.2d 341, 345 (5th Cir. 1991); T.N.T. Marine
Service, Inc. v. Weaver Shipyards and Dry Docks, Inc., 702 F.2d 585, 587-88 (5th Cir.), cert. denied, 104 S.Ct. 151 (1983).

Shortly after defendant/third-party plaintiff Donjonfiled its third-party complaint against Breakwaters for indemnity and contribution, the magistrate judge granted Donjon's oral motion to amend its third-party complaint to reflect that it was seeking a claim for judgment against Breakwaters in favor of plaintiffs pursuant to Fed. R. Civ. P. 14(c). See Order Amending Third Party Complaint, June 1, 1995. A third party claim under Fed. R. Civ. P. 14(c) can only be made with respect to admiralty claims as contemplated under Rule 9(h). See Fed. R. Civ. P. 14(c) ("When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third party plaintiff, may bring in a third party defendant who may be . . .liable. . . by way of remedy over, contribution or otherwise on account of the same transaction . . .."); Teal v. Eagle Fleet, Inc., 933 F.2d 341, 344 n.1 (5th Cir. 1991) ("Third party claims under Rule 14(c) are only available in admiralty or maritime claims."). Donjon's Rule 14(c) claim, then, made it clear to all parties that this case would proceed, in part at least, as an admiralty claim.4

Furthermore, the parties' manifestation of intent to proceed under admiralty jurisdiction was confirmed by the final pre-trial order, entered with the consent of Breakwaters, which stated that admiralty alone was the basis for jurisdiction. See Joint Final Pre-Trial Order ("The jurisdiction of the Court arises under Admiralty Law as modified by the Jones Act, 46 U.S.C. Section 688."; see also

_____

4. The dissent argues that "actions by a defendant should not control the question of whether a plaintiff meant to invoke admiralty jurisdiction." Dissent at 22. We do not suggest that defendant-third party plaintiff Donjon was single-handedly able to invoke admiralty procedure on behalf of plaintiff; rather that because no parties objected to Donjon's motion, it became clear that all parties tacitly agreed to pursue an admiralty claim, and that this case would proceed, at least in part, as such. Moreover the fact that the plaintiffs joined in the Pretrial Order and are now appellants before us on this interlocutory appeal further demonstrates that they are cognizant of the invocation of admiralty jurisdiction. The dissent's ensuing cite makes clear that actions of the plaintiff are relevant to what jurisdiction the plaintiff has invoked. Dissent at 22 citing Bryan v. Associated Container Transp., 837 F.Supp. 633, 641 (D.N.J. 1993).

Fedorczyk, 82 F.3d at 73 (holding that the district court did not have admiralty jurisdiction and noting that the district court had entered a pretrial order, stating that the "jurisdictional predicate" was diversity of citizenship, without objection from any party (including appellant Fedorczyk who was arguing in favor of admiralty jurisdiction)). Having concluded that the parties' pleadings and actions were sufficient to invoke admiralty jurisdiction, we have jurisdiction to hear Foulks' and Donjon's interlocutory appeal pursuant to 28 U.S.C. 1292(a)(3).

III. Seaman Status

Turning to the merits of the appeal, Foulk and Donjon argue that the District Court erred in granting partial summary judgment on the issue of Layne Foulk's seaman status under the Jones Act. The Jones Act provides a cause of action in negligence for "any seaman" injured "in the course of his employment." 46 U.S.C. 688. There are two components to "seaman" status. See McDermott Int'l Inc., v. Wilander, 111 S.Ct. 807, 813 (1991); Chandris, Inc. v. Latsis, 115 S.Ct. 2172 (1995). First, the "employee's duties" must "contribut[e] to the function[ing] of the vessel or to the accomplishment of its mission." Chandris, 115 S.Ct. at 2190. Second, the worker's "connection to the "vessel in navigation" must be "substantial in terms of both its duration and its nature." Id. The district court found that while the first requirement was met, as a matter of law, the second requirement could not be met and thus granted partial summary judgment to Breakwaters. Foulk, 961 F.Supp. at 698. The district court reasoned that Foulk's 10-day assignment was temporary and, therefore, not of sufficient duration to satisfy the Chandris "substantial duration" requirement. Id. ("Ten days (excluding nights), with no view towards a more permanent relationship, is simply too short a duration to satisfy the Chandris durational requirement for seaman status."). We review the district court grant of summary judgment5 de novo. See

_____

5. The standard for summary judgment is well settled: "Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine issue of material fact, and the moving party is

9

Semper v. Johnson and Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

The Jones Act fails to define the term "seaman." 46 U.S.C.  688. In 1927, Congress provided some content to the Jones Act seaman requirement by passing the Longshore and Harbor Workers' Compensation Act (LHWCA). 33 U.S.C.  901-950. The LHWCA provides the exclusive remedy for land-based maritime workers and excludes from its purview "a master or member of a crew of any vessel." 33 U.S.C.  902(3)(G). The Jones Act and LHWCA are mutually exclusive. Because eligibility under the LHWCA precludes eligibility under the Jones Act, "master or member of a crew" must be seen as a refinement of the term "seaman" in the Jones Act. Harbor Tug and Barge Co. v. Papai, 117 S.Ct. 1535, 1538 (1997); McDermott Int'l Inc., v. Wilander, 111 S.Ct. 807, 813 (1991).

More recently, the Supreme Court has provided a framework from which to analyze "seaman" status for purposes of the Jones Act, providing two essential requirements. See McDermott Int'l, 111 S.Ct. at 813; Chandris, Inc. v. Latsis, 115 S.Ct. 2172 (1995). First, the worker's duty must be to contribute to the functioning of the vessel, and second, the worker's connection to the vessel must be "substantial in terms of both its duration and nature." Chandris, 115 S.Ct. at 2190. The Court explained that the purpose of the "seaman" requirement is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation," reserving seaman status for those who are regularly exposed to the perils of the sea. Id. The

_____

entitled to judgment as a matter of law. Fed. R. Civ. P 56(c). When, as here, the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden. The nonmoving party creates a genuine issue of material fact if he provides sufficient evidence to allow a reasonable jury to find for him at trial. We give the nonmoving party the benefit of all reasonable inferences." Wetzel v. Tucker, No. 97-7207, slip op. at 4, n.2 (3d Cir. Mar. 23, 1998) (citations omitted).

10

Court made clear that the "total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the . . . vessels." Id.

Furthermore, the issue of seaman status is a mixed question of fact and law. Id. Once the court defines the appropriate standard, the trier of fact must decide whether a particular employee meets that standard and is thus a seaman. Id.; Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 36-37 (3d Cir. 1975). "Nevertheless,`summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion." Harbor Tug, 117 S.Ct. at 1540. The District Court granted Breakwaters' motion for partial summary judgment on seaman status, reasoning that the facts and the law support only the conclusion that Foulk was not a seaman. We do not agree.

There is no question that Foulk met the first requirement -- he contributed to the functioning of the vessel and to the accomplishment of its mission. As the district court found, the mission of the vessel in question, the Farrell 256, was the installation of an artificial reef. Foulk, 961 F.Supp. at 696. Foulk was employed as a diver whose duty it was to aid in the installation of the reef. See Wilander, 111 S.Ct. at 817 ("It is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work.").

There is also no question that Foulk met the first part of the second requirement -- his connection to the vessel was substantial in nature. As the district court found, Foulk and the dive crew were necessary for the successful completion of the Farrell 256's project -- the construction of the artificial reef. Foulk, 961 F.Supp. at 697. Furthermore, the profession of commercial diving is maritime in nature as it cannot be done on land. Wallace v. Oceaneering Int'l, 727 F.2d 427436 (5th Cir. 1984). Commercial divers are regularly exposed to the perils of the sea, the protection from which was the purpose of the Jones Act seaman requirement. Chandris, 115 S.Ct. at 2190.

There is a question, however, whether Foulk met the second part of the second requirement -- that Foulk's

11

connection to the Farrell 256 was substantial in duration. Foulk had worked alongside the Farrell 256 on the Avalon reef project for only half a day when he was injured. Nevertheless, under the "no snapshot" doctrine, articulated in Chandris, a court does not evaluate a worker's connection to a vessel or fleet at the moment of injury. Instead, the court must consider his intended relationship, as if he had completed his mission uninjured. 115 S.Ct. at 2187, 2191-92. The contemplated arrangement between Foulk and the Farrell 256 was for 10 days' work. Thus, under the "no snapshot" doctrine, 10 days, not a few hours, is the appropriate durational measure.

The question then is whether Foulk qualifies as a Jones Act "seaman" when his durational connection to the Farrell 256 was only 10 days, i.e,. whether 10 days is sufficient for "substantial duration." The district court found that, as a matter of law, a 10 day relationship was too short to satisfy the Chandris durational requirement. Foulk, 961 F.Supp. at 698.6

We conclude that the durational element cannot be answered by an absolute measure. It is the temporal element and the nature of the activities performed that, taken together, determine seaman status. Chandris, 115 S.Ct. at 2190-91. While the Supreme Court did adopt "the centerpiece of the formulation used by the Court of Appeals" in that case (the two-part test), and did find it "important that a seaman's connection to a vessel. . . be substantial in both respects (duration and nature)," id. at 2191, the Court specifically rejected "the temptation to create detailed tests to effectuate the congressional purpose, tests that tend to become ends in and of themselves." Id. at 2190. To define substantial duration by

_____

6. The district court cited, as relevant points in arriving at its decision,
the fact that Foulk went out to the diving barge each morning and went home each evening; he did not eat breakfast or supper and he did not sleep on board the barge. Foulk, 961 F.Supp. at 698. Nevertheless, where Foulk ate or slept had nothing to do with the performance of his duties. Nor did the location where Foulk ate or slept in any way affect the maritime nature of his duties. For that reason, we will look at the duration of the job as ten days, without subtracting for the nights on shore.

12

an absolute number would be to create such a test. The ultimate inquiry is "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time," id. at 2191, and the two-part test is merely an aid in making that determination. So while the Court did explain that both the duration and the nature of the connections be "substantial," id., the inquiry is one in the totality of circumstances. Id. at 2190. It is inappropriate to attempt to determine the minimum durational element by an absolute number, such as 10 days.

Furthermore, this reasoning is consistent with this court's holding that "lack of long-continued[durational] attachment to a vessel cannot, as a matter of law, serve to deny [Jones Act] seaman status to an employee who is injured while assigned to and performing normal crew service." Reeves v. Mobile Dredging & Pumping Co. Inc., 26 F.3d 1247, 1252 (3d Cir. 1994) citing with approval Latsis v. Chandris, Inc., 20 F.3d 45 (2d Cir. 1994) aff'd 115 S.Ct. 2172. Although pre-Chandris, this court in Reeves was cognizant of the "permanence" requirement that required a worker's assignment to be substantial in duration, the holding eventually reached by the Supreme Court in Chandris. Our holding in Reeves that the lack of long attachment to a vessel cannot deny seaman status as a matter of law remains effective post-Chandris. Here, Foulk was clearly performing the "normal crew service" of the Farrell 256 -- installation of the artificial reef. The fact that he was only going to do it for 10 days does not, by itself, mandate summary judgment. Ten days is not a "clearly inadequate temporal connection to vessels in navigation, sufficient to take the question from the jury by granting summary judgment." See, e.g. Palmer v. Fayard Moving and Transportation Corp., 930 F.2d 437 (5th Cir. 1991). A jury could reasonably find that an employee's connections to a vessel are substantial in both duration and nature even if the duration contemplated is 10 days. The analysis of seaman status, and ultimately of whether an employee's connections are substantial in duration and nature, may include a multiplicity of factors. See, e.g., Betrand v. International Mooring & Marine, Inc., 700 F.3d 240 (5th Cir.

13

1983) cert. denied, 464 U.S. 1069 (1984). The contemplated number of days of employment is only one of these factors.

Consequently, we will reverse the trial court's grant of summary judgment on seaman status and remand the case to the district court for further proceedings consistent with this opinion.7

_____

7. The dissent comments on the implications of this opinion vis-a-vis plaintiffs' demand for a jury trial. Dissent at 23. We do not pass on this question as it is not presently before us at this interlocutory appeal of a grant of partial summary judgment. If this question were to come up at a later date, it would of course be governed by relevant legal precedent including Fitzgerald v. United States Line Co. , 83 S.Ct. 1646 (1963) and Haskins v. Point Towing Co., 395 F.2d 737 (3d Cir. 1968).

GREENBERG, Circuit Judge, dissenting:

I respectfully dissent from my colleagues' determination that this court has jurisdiction to hear this interlocutory appeal. Because I dissent on jurisdictional grounds, I do not reach the substantive issue raised on the appeal.

An interlocutory appeal under 28 U.S.C. 1292(a)(3) is appropriate only in a case based on admiralty jurisdiction. When a complaint sets forth allegations potentially cognizable under both the admiralty and non-admiralty jurisdiction of the district court, it must contain a statement identifying the claim as one in admiralty in order to invoke the district court's admiralty jurisdiction under 28 U.S.C. 1333. See Fed. R. Civ. P. 9(h). This designation is significant, because claims arising under admiralty jurisdiction to some degree involve different procedures from claims at law, not the least of which is the denial of a jury trial. See Fed. R. Civ. P. 38(e); In re Consolidation Coal Co., 123 F.3d 126, 132 (3d Cir. 1997). In determining whether the plaintiff made the admiralty jurisdiction election, courts must look to the face of the complaint to see if it contains the appropriate jurisdictional allegations. See Heilman v. United States, 731 F.2d 1104, 1111 (3d Cir. 1984).

In the present case, the initial complaint states that "[t]he jurisdiction of this Court arises under the Admiralty law as modified by the Jones Act, 46 USC 688, and the diversity jurisdiction of the Court, 28 USC 1332 . . . ." Complaint at 2. The language in the first amended complaint parallels this allegation, but omits the reference to the Jones Act, instead stating that the court's jurisdiction "arises under the Admiralty law and the diversity jurisdiction of the Court, 28 USC 1332 . . . ." First Amended Complaint at 1. The reason for this omission of the Jones Act allegation is that the Foulks dropped their Jones Act claim against Breakwaters, Layne B. Foulk's employer. The initial complaint and the first amended complaint also contain a demand for a jury trial, a right which the Foulks preserved in the final pretrial order. See Complaint at 7; First Amended Complaint at 4; Joint Final Pretrial Order at 1.

In asserting an action under the Jones Act, a plaintiff can elect to sue either under admiralty jurisdiction or at law

15

invoking federal question jurisdiction. See Yates v. Dann, 223 F.2d 64, 66 (3d Cir. 1955); 14 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3677 at 492 (Supp. 1997). Accordingly, because the Foulks' original complaint alleged jurisdiction under the Jones Act, it stated a claim potentially cognizable under either admiralty or non-admiralty jurisdiction. However, the complaint did not mention specifically Rule 9(h) or 28 U.S.C. 1333; therefore, while the Foulks plainly invoked the court's diversity jurisdiction, it is unclear whether in addition they intended to invoke the court's admiralty jurisdiction or whether they chose to rely on the court's federal question jurisdiction. When the Foulks amended their complaint to eliminate the Jones Act claim, this action also eliminated any potential federal question jurisdiction; but the jurisdictional question remained unclear, because they still could rely on two possible bases for jurisdiction, i.e., admiralty and diversity jurisdiction.

In discussing the language in a complaint necessary to invoke admiralty jurisdiction in cases with multiple possible bases for jurisdiction, we have held that "[t]o invoke admiralty jurisdiction . . . a plaintiff must affirmatively insert a statement in the pleadings identifying the claim as an `admiralty or maritime claim.' " Fedorczyk v. Caribbean Cruise Lines, LTD, 82 F.3d 69, 73 (3d Cir. 1996); see also Bryan v. Associated Container Transp., 837 F. Supp. 633, 641-42 (D.N.J. 1993) (holding that the claim was based on diversity jurisdiction and not maritime jurisdiction in part because the party did not specifically invoke maritime jurisdiction under Rule 9(h)). However, beyond this statement, we did not provide any guidance in Fedorczyk instructive here; thus, it is appropriate to examine decisions of other courts that have confronted this problem to determine what our rule should be.

The Court of Appeals for the Fifth Circuit has crafted a liberal rule regarding the language necessary to elect admiralty jurisdiction under Rule 9(h). See T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc., 702 F.2d 585, 587-88 (5th Cir. 1983) (holding that an allegation that "[t]his is also a suit for breach of a maritime contract and for maritime tort" was sufficient to invoke admiralty

16

jurisdiction). Under this rule, the complaint does not have to mention Rule 9(h) specifically, see Bodden v. Osgood, 879 F.2d 184, 186 (5th Cir. 1989); instead, the complaint only need contain "a simple statement asserting admiralty or maritime claims." Teal v. Eagle Fleet, Inc., 933 F.2d 341, 345 (5th Cir. 1991) (quoting T.N.T. Marine, 702 F.2d at 588). However, not every complaint that contains allegations relating to admiralty should be considered to have invoked admiralty jurisdiction. Instead, courts must look to the "totality of the circumstances" of the case. Bodden, 879 F.2d at 186.

The Court of Appeals for the First Circuit also has held that the mention of Rule 9(h) is not required. In Concordia Co. v. Panek, 115 F.3d 67, 72 (1st Cir. 1997), the court held that to invoke admiralty jurisdiction, "the preferred technique is to invoke expressly Rule 9(h)," but the court did not require litigants to do so. Instead, the court examined the pleadings, which stated that the claim was "In Admiralty," and concluded that this language was sufficient to invoke admiralty jurisdiction in light of the fact that the litigant did not demand a jury trial. Id.

The Court of Appeals for the Ninth Circuit has not adopted such a liberal rule, but it also has not required the specific mention of Rule 9(h). In Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987), the amended complaint contained a claim seeking relief under the "Jones Act and General Maritime Law." The amended complaint did not invoke admiralty jurisdiction; instead, the plaintiff "was careful to invoke federal jurisdiction only under 28 U.S.C.   1331." Id. The court held that such language was insufficient to invoke admiralty jurisdiction, because the plaintiff elected only to invoke jurisdiction under the "law" side rather than on the "admiralty side." Id.; see generally Owens-Illinois, Inc. v. United States Dist. Court for the W. Dist. of Wash., 698 F.2d 967, 972 n.2 (9th Cir. 1983) (reasoning that requiring a statement specifically mentioning Rule 9(h) to invoke admiralty jurisdiction seems to be the correct rule, but holding that the court did not need to reach the question). Thus, even though the court did not require the specific mention of Rule 9(h), the Court of Appeals for the Ninth

17

Circuit seems to have adopted a stricter pleading standard than the Courts of Appeals for the Fifth and First Circuits.

Although the Court of Appeals for the Fourth Circuit has not ruled on this issue, a number of district courts within that circuit have required the specific mention of Rule 9(h) in order to invoke admiralty jurisdiction in cases with multiple bases for jurisdiction. See Lewis v. United States, 812 F. Supp. 620, 628 (E.D. Va. 1993) (requiring a specific mention of Rule 9(h)); see also Banks v. Hanover Steamship Corp., 43 F.R.D. 374, 376-77 (D. Md. 1967) (requiring a specific statement of admiralty jurisdiction). Thus, these rulings have established the strictest standard among the federal courts that have addressed this issue.

After reviewing these cases and the specific facts of this case, I would hold that we should be somewhat exacting in our view of the pleadings with regards to invoking admiralty jurisdiction in cases involving more than one potential jurisdictional base. While under the Federal Rules of Civil Procedure "[n]o technical forms of pleading or motions are required," Fed. R. Civ. P. 8(e)(1), it is important for a plaintiff to alert the district court that he or she intends to invoke the court's admiralty jurisdiction. If the plaintiff wishes to invoke admiralty jurisdiction and its accompanying procedures in a case involving more than one potential jurisdictional base, the plaintiff should be required to state specifically that the claim is "an admiralty or maritime claim within in the meaning of Rule 9(h)."5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure  1313 at 719 (2d ed. 1990). As Professor Thomas J. Schoenbaum has stated:

> If, however, the claim is cognizable not only in admiralty but also on some other ground of federal jurisdiction (such as diversity), the pleader is put to an election whether to invoke the special admiralty procedures and remedies. To plead an admiralty or maritime claim in such a case, the pleading must, in addition to the admiralty jurisdictional allegations, contain an identifying statement (or its equivalent) as follows: This is an admiralty or maritime claim within the meaning of Rule 9(h). If this identifying statement is

18

> not made, the claim may be treated as a non-maritime
> civil action.

Thomas J. Schoenbaum, Admiralty and Maritime Law
  21-1 at 467 (2d ed. 1994) (emphasis in original) (footnotes omitted).

This case, of course, involves the precise situation which Schoenbaum describes. Application of the rule as set forth by Schoenbaum would place the court and the other litigants on notice that the plaintiff intends to invoke the admiralty jurisdiction of the district court. Such a rule requiring the complaint to mention Rule 9(h) is not unduly harsh, as the plaintiff can control the situation completely with his or her pleadings. Because the Foulks failed to mention Rule 9(h), I would hold that they did not make the required election under that rule and therefore would dismiss this appeal for lack of jurisdiction.

In holding that no such statement is required, the majority relies on the language of Rule 9(h) (emphasis added) which provides:

> A pleading or count setting forth a claim for relief
> within the admiralty and maritime jurisdiction that is
> also within the jurisdiction of the district court on
> some other ground may contain a statement identifying
> the claim as an admiralty or maritime claim for the
> purposes of Rules 14(c), 38(e), 82, and the
> Supplemental Rules for Certain Admiralty and
> Maritime Claims. . . .

The majority contends that the use of the word "may" demonstrates that specific invocation of Rule 9(h) is not necessary; however, in my view this argument is unfounded. This aspect of Rule 9(h) describes a case where, as here, a party may invoke multiple potential bases for jurisdiction--admiralty jurisdiction and one or more other jurisdictional bases, i.e., federal question or diversity jurisdiction. Specifically, after the filing of the first amended complaint, the Foulks could rely on diversity jurisdiction as an alternative to admiralty jurisdiction. In this dual or multiple jurisdictional setting, Rule 9(h) does not require plaintiffs to invoke admiralty jurisdiction; instead, it provides them with a choice--they can rely either on

19

admiralty jurisdiction or another jurisdictional ground. The use of the word "may" in Rule 9(h) refers to this choice.

Plaintiffs "may" invoke admiralty jurisdiction or in an appropriate case they may chose to rely on federal question or diversity jurisdiction. To do the latter, they merely do not invoke Rule 9(h). Thus, contrary to the majority's reasoning, the specific wording in Rule 9(h), particularly the use of "may," leads to the conclusion that a plaintiff specifically must invoke the court's admiralty jurisdiction for the case to be in admiralty if it is otherwise within the jurisdiction of the district court. "May" simply means that when both admiralty and other jurisdictional bases are available, the plaintiff has the option to select admiralty jurisdiction. See Fed. R. Civ. P. 9 advisory committee's note (1966 Amendment) (noting that after the unification of the rules of procedure, "the pleader must be afforded some means of designating his claim as the counterpart of the present suit in admiralty, where its character as such is not clear."). "May" surely does not mean that a plaintiff can select admiralty jurisdiction either expressly or covertly and leave the court and the other parties guessing as to the plaintiff's intentions.

Even using the more liberal standard of the majority, I would not hold that the Foulks, in fact, did invoke admiralty jurisdiction in view of the totality of the circumstances involved in this case. Here, as was true of the plaintiff in Trentacosta, the Foulks were careful not to invoke admiralty jurisdiction under Rule 9(h). Instead, the original complaint referred to the Jones Act and federal diversity jurisdiction, and specifically did not mention admiralty jurisdiction. After all, to say, as did the Foulks, that the "jurisdiction of this Court arises under Admiralty law as modified by the Jones Act" is not to invoke admiralty jurisdiction because, as I set forth above, a Jones Act case can be brought in the district court without invoking admiralty jurisdiction. What the Foulks did not say is that they are bringing the case invoking the admiralty jurisdiction of the district court. The Foulks' first amended complaint did not clarify the situation for while they did allege that the court's jurisdiction "arises under the Admiralty law," they also invoked the court's diversity

20

jurisdiction; and cases under admiralty law can be brought in a district court under its diversity jurisdiction. See, e.g., Continental Cas. Co. v. Canadian Universal Ins. Co., 605 F.2d 1340, 1344 (5th Cir. 1979) ("A maritime issue may be raised in a diversity suit; this is one significance of the savings-to-suitors clause, 28 U.S.C. 1333, which permits a litigant to obtain federal jurisdiction over, and jury resolution of, an admiralty question by invoking federal jurisdiction on an independent basis."). Thus, this language in the first amended complaint could be interpreted as relying solely on diversity jurisdiction and not intending to rely on admiralty jurisdiction at all. I emphasize that the Foulks did not specify that they were bringing the case under the court's admiralty jurisdiction; and therefore, the majority is wrong when it indicates that the "Foulks alleged both diversity and admiralty jurisdiction." Slip Opinion at 3.

Furthermore, the Foulks requested a jury trial on the issues contained in the complaint. Such a request is inconsistent with admiralty jurisdiction, and it lends credence to the conclusion that the plaintiff conceived of the claim as being at law rather than under the district court's admiralty jurisdiction. See Concordia, 115 F.3d at 72 ("One important factor in determining whether a claimant has elected to proceed in admiralty is whether he demanded a jury trial."); Sanders v. Seal Fleet, Inc., 1998 WL 136097, *4-5 (E.D. Tex. Mar. 23, 1998) (holding that the action was under the court's federal question rather than admiralty jurisdiction, because the plaintiff demanded a jury trial and his complaint invoked the court's jurisdiction under the Jones Act and general maritime law rather than specifically pleading Rule 9(h)); see also In re Consolidation Coal, 123 F.3d at 132 (noting that " `[t]here is no right to a jury in actions instituted in admiralty' " (citation omitted)). Are we to believe that insofar as the Foulks invoked diversity jurisdiction they are entitled to a jury trial while at the same time for the same claim they are entitled to a bench trial in admiralty? As far as I am concerned, the Foulks did not invoke admiralty jurisdiction, and I therefore would dismiss the appeal for lack of jurisdiction.

21

To support its determination, the majority cites the pretrial order and Donjon's Rule 14(c) motion as evidence of the Foulks' selection of admiralty jurisdiction. However, this evidence is unpersuasive. First, the pretrial order did not restrict the court's jurisdiction only to admiralty, as the majority suggests. The order stated that the court's jurisdiction arose under "Admiralty Law as modified by the Jones Act 46 USC  688." In spite of the majority's assertion, this language does not demonstrate that the parties wished to invoke admiralty jurisdiction because as I noted previously, a plaintiff can bring claims under the Jones Act either in admiralty or at law. Moreover, as I explain below, the pretrial order discloses nothing about the Foulks' choice of jurisdiction. Therefore, although the statement in the pretrial order mentions admiralty law as modified by the Jones Act, in my view this reference demonstrates nothing useful for the issue at hand. I reiterate that there is no reason to assume that a case under "Admiralty Law as modified by the Jones Act" is under the admiralty jurisdiction.

Second, with regard to the Rule 14(c) motion, actions by a defendant should not control the question of whether a plaintiff meant to invoke admiralty jurisdiction. It was, after all, Donjon and not the Foulks who brought the Jones Act claim to which the pretrial order refers, as the Foulks abandoned their Jones Act claim when they filed their first amended complaint. The question of what jurisdiction the plaintiff has invoked more properly is resolved by examining the pleadings and actions of the plaintiff, not the defendant. See generally Bryan, 837 F. Supp. at 641 ("[T]he application of maritime law to a plaintiff's claims is a matter about which a plaintiff exercises a degree of control."). A defendant, by filing a third party complaint cannot change the jurisdictional basis for a plaintiff's complaint. Considering all of the circumstances of the case and giving more weight to the pleadings and actions of the Foulks, this evidence regarding the Rule 14(c) motion is not sufficient to establish that they meant to invoke the admiralty jurisdiction of the district court.

In a case involving both admiralty and non-admiralty bases of jurisdiction, if a plaintiff wishes to invoke

22

admiralty jurisdiction, he or she should be required to make that election in a clear statement specifically invoking Rule 9(h) in order to avoid procedural problems that otherwise could arise later, such as a dispute over whether there should be a jury trial or, as here, over whether a court of appeals has jurisdiction over an interlocutory appeal. Is it too much to ask that a plaintiff be clear on this fundamental point? The adoption of my position would mean that disputes of the procedural and jurisdictional kind involved on this appeal will become of historical interest only. Moreover, in view of the rather limited size of the admiralty bar, I am confident that a rule requiring specific reference to Rule 9(h) would become widely known to interested parties and would not become a trap for the unwary plaintiff, particularly because a plaintiff's failure to invoke Rule 9(h) is likely to preserve his or her right to a jury trial. I repeat, however, that even applying the liberal rule utilized by the majority in this case, I would hold that the Foulks have not invoked the admiralty jurisdiction of the district court.

As a result of the majority's opinion, the Foulks face a problem that they may not recognize they have. Both of the complaints and the final pretrial order preserved their demand for a jury trial, and presumably the parties were ready to proceed on that basis. However, prior to trial, Donjon filed this appeal, in which the Foulks joined, in response to the district court's partial grant of summary judgment. In assuming jurisdiction over this interlocutory appeal, the majority finds that this case rests on the admiralty jurisdiction of the court. As a result, presumably the Foulks have lost any right to a jury trial. 1 Based on

_____

1. The majority specifically does not reach this question, instead stating that this issue will have to be decided "at a later date" in reliance on the
"relevant legal precedent including Fitzgerald v. United States Line Co., 83 S.Ct. 1646 (1963) and Haskins v. Point Towing Co., 395 F.2d 737 (3d Cir. 1968)." Slip Opinion at 14 n.7. While I agree that such a determination will have to be made in the future, the result is preordained and neither Fitzgerald nor Haskins will help the Foulks to preserve their jury trial demand. Both Fitzgerald and Haskins involved Jones Act claims brought at law that had been coupled with other admiralty claims. See Haskins, 395 F.2d at 739-41. Because the Jones

23

their consistent demands for a jury trial, I cannot believe
that the Foulks intended to abandon that request. In the
circumstances, the Foulks by joining in this appeal may
have brought about a classic operation of the doctrine of
unintended consequences.

For the foregoing reasons, the interlocutory appeal
should be dismissed for lack of jurisdiction. Therefore, I
respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

Act claim had been brought at law, and not in admiralty, the plaintiffs
were entitled to receive a jury trial as to all issues, including the
pendent
maritime claims. However, this case is fundamentally different, because
the majority has determined that the Foulks' claims arose under the
admiralty jurisdiction of the court. As we pointed out in Haskins "the
Jones Act has been construed to permit a Jones Act claim for negligence
to be maintained as an independent admiralty action." Id. at 741. Since
this case is governed solely by the court's admiralty jurisdiction rather
than an alternative non-admiralty basis for jurisdiction such as existed
in Fitzgerald and Haskins, the Foulks cannot rely on that precedent to
demand a jury trial.

24