Kevin **WINGERTER**, Plaintiff–Appellee,

v.

**CHESTER QUARRY COMPANY,** Defendant–Appellant.

No. 98–3069.

United States Court of Appeals, Seventh Circuit.

Submitted: Sept. 11, 1998.

Decided: Sept. 11, 1998.

Opinion Issued: July 23, 1999.*

---

* This Court previously issued an order dismissing this appeal for lack of appellate jurisdiction. This opinion explains the reasoning of the panel.

Kirk E. Karamanian (submitted), O'Bryan, Baun & Cohen, Birmingham, MI, for Plaintiff–Appellee.

Thomas L. Caradonna, Lewis, Rice & Fingersh, St. Louis, MO, for Defendant–Appellant.

Before MANION, KANNE, and ROVNER, Circuit Judges.

PER CURIAM.

In March 1997, Kevin Wingerter filed a complaint under the Jones Act, 46 U.S.C. § 688, and under general admiralty and maritime law, naming Chester Quarry Company ("Chester") as the lone defendant. Wingerter sought damages for injuries he sustained as a result of Chester's alleged negligence while he was employed by Chester as a towboat pilot on the Mississippi River. Wingerter then filed a First Amended Complaint, which added a defendant subsequently dismissed by partial summary judgment. In January 1998, Wingerter filed a Second Amended Complaint, which set forth the alleged circumstances with more specificity, and Chester filed its answer and affirmative defenses.

In June 1998, Wingerter filed a motion for leave to file a Third Amended Complaint in order to designate the action as being one in admiralty pursuant to Fed. R.Civ.P. 9(h), the practical effect of which was the waiver or nullification of his prior demand for a trial by jury. *See* Fed. R.Civ.P. 38(e). After the magistrate judge granted Wingerter's motion, and the Third Amended Complaint was filed, Chester filed a motion with the district court judge to vacate the order granting leave to file the Third Amended Complaint, or, in the alternative, for leave to file an answer and a demand for a jury trial. On July 14, 1998, the district court judge denied the motion to vacate and set the bench trial for September 14, 1998.

On August 11, 1998, Chester filed a notice of appeal from the district court's denial of the motion to vacate. Chester also filed a motion to stay the trial pending appeal, which the district court denied. This Court ordered the parties to file brief memoranda addressing the Court's jurisdiction over the appeal. On September 11, 1998, this Court dismissed the appeal for lack of appellate jurisdiction, denied Chester's renewed motion for a stay as moot, and indicated that this opinion setting forth the panel's reasoning would follow.

## Analysis

A court of appeals has an obligation to examine its jurisdiction sua sponte, even if the parties fail to raise a jurisdictional issue. *United States v. County of Cook*, 167 F.3d 381, 387 (7th Cir.1999). Assuming for the moment that we have appellate jurisdiction, we must decide whether Chester waived its right to appeal, and, if not, which orders would be before this Court on appeal. The magistrate judge was authorized to rule on the motion for leave to file the Third Amended Complaint pursuant to 28 U.S.C. § 636(b)(1)(A), which provides that the district court may designate a magistrate judge to hear and determine, with certain exceptions not relevant here, any nondispositive pretrial matter pending before the district court. *See United States v. Brown*, 79 F.3d 1499, 1503 (7th Cir.), *cert. denied*, 519 U.S. 875, 117 S.Ct. 196, 136 L.Ed.2d 133 (1996); United States District Court for the Southern District of Illinois Local Rule 25(c). Designation of the magistrate judge to hear such pretrial matters is automatic by operation of that court's Local Rule 26(a)(1). Although a magistrate judge's order entered pursuant to § 636(b)(1)(A) is " 'self-operating' and thus

valid when entered," *Brown*, 79 F.3d at 1503 (citation omitted), the district court was authorized to review the magistrate judge's order pursuant to the second sentence of § 636(b)(1)(A), which provides that the district court "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A); *Brown*, 79 F.3d at 1503. Indeed, such a challenge to the magistrate judge's order is a necessary predicate to Chester's ability to attack the order on appeal. *See Brown*, 79 F.3d at 1504–05 ("failure to challenge before a district judge a magistrate's pretrial rulings under § 636(b)(1)(A) waives the right to attack such rulings on appeal" subject to certain "equitable considerations"). Pursuant to Local Rule 28(a), the district court's reconsideration of the magistrate judge's pretrial order may occur sua sponte, or by the filing of "a written statement of appeal" within 10 days of the issuance of the magistrate judge's order. Here it appears that Chester's motion to vacate, filed within 10 days of the entry of the magistrate judge's order, served as the statement of appeal. We therefore conclude that Chester has not waived its right to challenge both orders on appeal.

■ Again assuming for the moment that we do have appellate jurisdiction, we next consider which order or orders would be before us. The notice of appeal specified that the appeal was from the district court's denial of the motion to vacate and it was timely filed as to that order. *See* Fed. R.App. P. 3(c)(1)(B), 4(a)(1)(A). Thus, the question is whether the magistrate judge's order would also be before us on appeal. The two orders are so entwined that it would be inefficient to give them separate consideration. Moreover, because § 636(b)(1)(A) has a self-contained mechanism for the district court's review of the magistrate judge's pretrial rulings, an appeal from the district court's order would necessarily encompass an appeal

from both orders, as it would be illogical to review the district court's order in isolation without reference to the magistrate judge's order. Accordingly, for purposes of our jurisdictional analysis, we will treat both orders as being subject to our review.

## A. Final Order

■ In analyzing its appellate jurisdiction, an appellate court looks first to the final judgment rule. Then, if the appealed order does not qualify as a final decision, the court must determine whether any statutory exceptions or other bases of jurisdiction support appellate jurisdiction. Thus, we will start with an examination of whether the order granting leave to file an amended complaint, and the denial of reconsideration of that order, constitutes a final decision.

■ The baseline principle for appealability is the final judgment rule, as embodied in section 1291 of Title 28, which provides that a court of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States...." 28 U.S.C. § 1291; *Cunningham v. Hamilton County*, — U.S. —, —, 119 S.Ct. 1915, 1919, 144 L.Ed.2d 184 (1999). A decision is final where it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Cunningham*, — U.S. at —, 119 S.Ct. at 1920 (citation and internal quotation omitted). The final judgment rule has been explained as follows:

> The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal.

> \* \* \* \*

> Nor does the statute permit appeals, even from fully consummated decisions,

where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results.

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

■ In this case, the district court's order did nothing more than affirm the magistrate judge's decision to allow the filing of the Third Amended Complaint. Both orders are "managerial order[s], like dozens of others a court must enter in the course of complex litigation." *See Equal Employment Opportunity Comm'n v. Mitsubishi Motor Mfg. of America, Inc.*, 102 F.3d 869, 871 (7th Cir.1996). Accordingly, because such orders are reviewable at the end of the case, they are not immediately appealable. *See id.*; *Bogard v. Wright*, 159 F.3d 1060, 1063 (7th Cir.1998) ("most procedural orders ... are entered before final judgment, and so in principle anyway are reviewable, albeit not immediately, when the judgment is entered"). *See also Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 229–30 (7th Cir.1995) (reversing in part for an erroneous denial of motion for leave to file an amended complaint). Furthermore, neither decision was "final" within the meaning of § 1291 in the traditional sense, as neither ended the litigation or afforded (or denied) any relief on the merits. ·*See Mitsubishi*, 102 F.3d at 871. Rather than terminating the litigation on the merits, "such an order ensures that litigation will continue in the District Court." *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 498, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989) (internal quotation and citation omitted). Finally, other courts have held that an order granting leave to amend a complaint is not a final decision. *See, e.g., Lawson v. Abrams*, 863 F.2d 260, 262 (2d Cir.1988) ("An order that grants leave to amend the complaint is plainly not a final decision because it allows the litigation to continue") (citations

omitted); *Levy v. Securities & Exchange Comm'n*, 405 F.2d 484, 486 (5th Cir.1968) (same); *La Capria v. Compagnie Maritime Belge*, 373 F.2d 579, 581 (2d Cir.1967) ("No discussion is required to show that the order [granting leave to amend the complaint to designate the action as one in admiralty pursuant to Fed.R.Civ.P. 9(h)] is [not] a final decision under 28 U.S.C. § 1291...") (citations omitted). Accordingly, we conclude that neither order is appealable as a final decision within the meaning of § 1291. This is precisely the type of appeal that the final judgment rule was designed to prevent, as such a piecemeal appeal promotes inefficient judicial administration, imposes unnecessary delay and cost, and interferes with the traditional relationship between trial and appellate courts. *See Cunningham*, —— U.S. at ——–——, 119 S.Ct. at 1919–20 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981)).

■ Although we have determined that appellate jurisdiction does not lie under § 1291 "in the traditional sense," *Mitsubishi*, 102 F.3d at 871, "a small category of orders that do not terminate the litigation," *Cunningham*, —— U.S. at ——, 119 S.Ct. at 1920 (citations omitted), are nevertheless appealable under the collateral order doctrine enunciated by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Thus, § 1291 "permits appeals not only from a final decision by which a district court disassociates itself from a case, but also from a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.'" *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). In order to fall under the collateral order doctrine, an appealed from decision must satisfy three elements:

(1) the order must conclusively determine the disputed question;

(2) the order must resolve an important issue completely separate from the merits of the action; and

(3) the order must be effectively unreviewable on appeal from a final judgment.

*Cunningham,* —— U.S. at ——, 119 S.Ct. at 1920; *Swint,* 514 U.S. at 42, 115 S.Ct. 1203; *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). If an order fails to meet one of these elements, it is not appealable as a collateral order.

■ This area of appellate jurisdiction need not detain us long, as Chester has expressly indicated that it does not assert that the orders fall under the collateral order doctrine. However, even if the argument had been raised, we would reject it, as neither order meets the requirements set forth above.

## B. Interlocutory Appeals

■ Because we have determined that the orders at issue were not final decisions, we must now consider whether there is some other basis for appellate jurisdiction. Congress has created some statutory exceptions to the final judgment rule, *e.g.* 28 U.S.C. § 1292, thereby allowing immediate appeal from certain interlocutory orders. *Swint,* 514 U.S. at 45–46, 115 S.Ct. 1203; *Herdrich v. Pegram,* 154 F.3d 362, 367 (7th Cir.1998), *petition for cert. filed,* 67 U.S.L.W. 3758 (U.S. Jun. 4, 1999) (No. 98–1949); *Evergreen Int'l*

*(USA) Corp. v. Standard Warehouse,* 33 F.3d 420, 423–24 (4th Cir.1994). Section 1292(a)[1] lists three categories of interlocutory orders that are immediately appealable. *Swint,* 514 U.S. at 46, 115 S.Ct. 1203. Because the first two categories are clearly inapplicable,[2] our analysis will focus on § 1292(a)(3), which provides that the court of appeals has jurisdiction of appeals from "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." *See also Kesselring v. F/T Arctic Hero,* 30 F.3d 1123, 1125 (9th Cir.1994) (§ 1292(a)(3) "creates an exception to the final judgment rule for orders determining the rights and liabilities of the parties") (citation omitted). Thus, there are three prerequisites to invocation of § 1292(a)(3):

(1) the underlying case must be an admiralty case "in which appeals from final decrees are allowed;"

(2) the appeal must be from an interlocutory order or decree of the district court; and

(3) the order or decree must have determined "the rights and liabilities of the parties."

*Foulk v. Donjon Marine Co., Inc.,* 144 F.3d 252, 255 (3d Cir.1998); *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked, and Abandoned Steam Vessel,* 833 F.2d 1059, 1063 (1st Cir.1987). For the reasons set forth below, we conclude that although the first

---

**1.** Section 1292(b) requires the district court to state in writing that it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b). Because the district court has not certified that the appeal meets the criteria of § 1292(b), that section is inapplicable here. *See Hewitt v. Joyce Beverages of Wisconsin, Inc.,* 721 F.2d 625, 626 (7th Cir.1983) (failure of a district court to certify an order for immediate appeal deprives court of appeals of jurisdiction to consider an appeal pursuant to § 1292(b)).

**2.** It is undisputed that the orders at issue here did not grant, continue, modify, refuse or dissolve an injunction, or refuse to dissolve or modify an injunction, § 1292(a)(1), or appoint a receiver or otherwise relate to a receivership, § 1292(a)(2). Furthermore, "[a]n order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1291(a)(1)." *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 279, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

two prerequisites to appeal under § 1292(a)(3) have been met, the third requirement, that the orders at issue on appeal determine the rights and liabilities of the parties, has not been satisfied. Accordingly, we hold that § 1292(a)(3) is not available as a source of appellate jurisdiction in this matter.

### 1. Admiralty Case

■ In determining whether § 1292(a)(3) applies, the first question is whether the underlying case is an admiralty case. *Noble Drilling, Inc. v. Davis*, 64 F.3d 191, 194 (5th Cir.1995).[3] The answer to this question can be pivotal, as "[n]umerous and important consequences flow from whether a district court treats a case as falling under admiralty or [some other form of subject matter] jurisdiction," *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 586–87 (5th Cir.) (per curiam) (listing examples), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983); *accord Foulk*, 144 F.3d at 255; *Alleman v. Bunge Corp.*, 756 F.2d 344, 345 (5th Cir.1984) (citing *T.N.T. Marine*). The most relevant consequence for our purposes is that the failure to properly reference a claim as being an admiralty claim will foreclose invocation of § 1292(a)(3), which, in the absence of any other basis for appellate jurisdiction, will result in dismissal of the appeal due to a lack of appellate jurisdiction. *Borne v. A & P Boat Rentals No. 4, Inc.*, 755 F.2d 1131, 1133 (5th Cir.1985); *Bodden v. Osgood*, 879 F.2d 184, 186–87 (5th Cir.1989); *Alleman*, 756 F.2d at 346.

■ Whether a case is an admiralty case turns on whether the plaintiff properly designated the action as an admiralty case. "There are special procedures for invoking the admiralty jurisdiction of a federal district court," and those procedures are set forth in Rule 9(h) of the Federal Rules of Civil Procedure, which governs the designation of admiralty claims. *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1547 (5th Cir.), *cert. denied*, 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991). Rule 9(h) provides:

> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15. A case that includes an admiralty or maritime claim within this subdivision is an admiralty case within 28 U.S.C. § 1292(a)(3).

Fed.R.Civ.P. 9(h). By its terms, then, Rule 9(h) is integral to our jurisdictional analysis because of the ipso facto quality of its last sentence, which provides that if the underlying case is properly designated as an admiralty case for purposes of Rule 9(h), it is also an admiralty case for purposes of § 1292(a)(3).

Rule 9(h) creates two categories of admiralty cases for purposes of appeal: (1) those that fall exclusively under admiralty jurisdiction; and (2) those that fall under admiralty jurisdiction as well as under some other form of federal subject matter

---

3. Section 1333 of Title 28 establishes the admiralty jurisdiction of the federal courts and provides, in relevant part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all

cases all other remedies to which they are otherwise entitled.

*Servis v. Hiller Sys. Inc.*, 54 F.3d 203, 206 (4th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 799, 133 L.Ed.2d 747 (1996); *Bodden v. Osgood*, 879 F.2d 184, 186 (5th Cir.1989).

jurisdiction. 16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3927, at 328 (2d ed.1996); *see also Foulk*, 144 F.3d at 255 ("Rule 9(h) helps clarify the applicability of these admiralty and maritime rules and procedures in a case where more than one basis for subject matter jurisdiction has been asserted"). In the first category, the plaintiff has no choice: "If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not." Fed.R.Civ.P. 9(h); *Baris*, 932 F.2d at 1547; *Trentacosta v. Frontier Pacific Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987). The best example of such a case is where the plaintiff asserts an in rem claim,[4] as such a claim is within the exclusive admiralty jurisdiction of the federal courts, and therefore may be brought only in federal court. *Linton v.*

*Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1484–85 (5th Cir.) (citing, *inter alia*, *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 431, 18 L.Ed. 397 (1866); *The Hine v. Trevor*, 71 U.S. (4 Wall.) 555, 571, 18 L.Ed. 451 (1866)), *cert. denied*, 506 U.S. 975, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992); *Powell v. Offshore Navigation, Inc.*, 644 F.2d 1063, 1065 n. 3 (5th Cir. Unit A May), *cert. denied*, 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981).

In the second category, the plaintiff has a choice whether the claim is treated as one under admiralty or some other form of jurisdiction. *Concordia Co., Inc. v. Panek*, 115 F.3d 67, 70 (1st Cir. 1997); *Fedorczyk v. Caribbean Cruise Lines. Ltd.*, 82 F.3d 69, 73 (3d Cir.1996); *Baris*, 932 F.2d at 1547; *Alleman*, 756 F.2d at 345.[5] In this category of cases, the

4. There are two types of claims in admiralty: in personam and in rem, and the differences have been explained as follows:

> In a much simplified analysis, we can classify admiralty claims as follows: 1) in personam, in which the defendant is a "person" (including corporations) and in which collection of a judgment involves tracing assets, garnishing them, etc. with all the attendant difficulties of collection; 2) in rem, in which a "vessel" (or other property) is the defendant and in which a judgment becomes a lien on the vessel (or other property) and may be enforced and collected by sale of the vessel (or other property), a sale which conveys title "good against the world."

> *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1484 n. 6 (5th Cir.) (citation omitted), *cert. denied*, 506 U.S. 975, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992).

5. A plaintiff with an in personam admiralty or maritime claim has two choices for filing his suit. First, he may file suit in federal court by invoking federal admiralty subject matter jurisdiction. *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir.1997), *cert. denied*, — U.S. ——, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998); 14A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3672, at 303 (3d ed.1998). However, if an alternative basis of subject matter jurisdiction exists, a plaintiff that wishes to proceed under admiralty jurisdiction must affirmatively invoke it. 14A WRIGHT ET AL., *supra*, § 3672, at 304. Second, under the saving to suitors clause, a

plaintiff also has the option of bringing his in personam admiralty or maritime claim at law (i.e. as an ordinary civil action), either in state court or in federal court (as long as the requirements for diversity, 28 U.S.C. § 1332, are met). *Ghotra*, 113 F.3d at 1054; 14A WRIGHT ET AL., *supra*, § 3672, at 307–10.

Those same choices confront a plaintiff with a Jones Act claim. The Jones Act permits a seaman, or the personal representative of a deceased seaman, injured in the course of his employment to sue his employer at law for damages in federal court. 46 U.S.C. § 688; *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1489 (5th Cir.), *cert. denied*, 506 U.S. 975, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992). A Jones Act claim supplies federal question subject matter jurisdiction. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 359, 381, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *accord* 14A WRIGHT ET AL , *supra*, § 3677, at 469; *Linton*, 964 F.2d at 1490; *Powell v. Offshore Navigation, Inc.*, 644 F.2d 1063, 1067 (5th Cir. Unit A May), *cert. denied*, 454 U.S. 972, 102 S.Ct. 521, 70 L.Ed.2d 391 (1981); *Mullen v. Fitz Simons & Connell Dredge & Dock Co.*, 172 F.2d 601, 603 (7th Cir.1948), *cert. denied*, 337 U.S. 959, 69 S.Ct. 1534, 93 L.Ed. 1758 (1949). Because the Jones Act provides that only the seaman's employer can be a defendant, a Jones Act claim is therefore an in personam claim, and, "[w]ith certain exceptions that are not involved here, a plaintiff has the right to select

issue then becomes just "how specific a party must be in identifying an admiralty claim in a complaint when that party is pleading alternate theories of subject matter jurisdiction." *Foulk*, 144 F.3d at 256. Although the complaint does not have to mention Rule 9(h) specifically, the preferred method to designate the action as being one in admiralty is by an express reference to Fed.R.Civ.P. 9(h). *Foulk*, 144 F.3d at 256; *Concordia*, 115 F.3d at 72; *Alleman*, 756 F.2d at 345; *T.N.T. Marine*, 702 F.2d at 587–88. This may be accomplished by "a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims," Fed.R.Civ.P. 9(h), or by a statement that the action is an admiralty action within the meaning of, or pursuant to, Fed.R.Civ.P. 9(h). *Fedorczyk*, 82 F.3d at 73; *Bodden*, 879 F.2d at 186; *T.N.T. Marine*, 702 F.2d at 587; cf. *Brotherhood Shipping Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*, 985 F.2d 323, 324, 326 (7th Cir.1993) (suit designated as one in admiralty in accordance with Rule 9(h) by "a Rule 9(h) designation"). Whether or not a complaint sufficiently invokes admiralty jurisdiction is evaluated under the totality of the circumstances, *Bodden*, 879 F.2d at 186, which includes the "parties' manifestation of intent" as demonstrated by their pleadings and actions, *Foulk*, 144 F.3d at 256–57.

Wingerter asserted two distinct causes of action: (1) a claim for unseaworthiness, maintenance, cure, wages, and punitive damages under general admiralty and maritime law; and (2) a claim for negligence under the Jones Act. *See Szymanski v. Columbia Transp. Co., A Div. of*

*Oglebay–Norton Co.*, 154 F.3d 591, 595 (6th Cir.1998) (en banc) ("claims brought under the Jones Act and claims of unseaworthiness brought under general maritime law are distinct causes of action, the elements of which differ somewhat"); *Cook v. American S.S. Co.*, 53 F.3d 733, 740 (6th Cir.1995) (explaining that the two causes of action are distinct and discussing the differences). Because each claim is an in personam claim and there is federal question subject matter jurisdiction for the Jones Act claim, Wingerter's case therefore falls under the second category of cases, and Wingerter was confronted with a choice as to whether he wanted to proceed in admiralty or at law. *See* 16 WRIGHT ET AL., *supra*, § 3927, at 328. In the original, First Amended, and Second Amended Complaints, Wingerter asserted jurisdiction under the Jones Act, 46 U.S.C. § 688, and "General Admiralty and Maritime Law," demanded a trial by jury, and made no reference to Rule 9(h). Under those circumstances, it is not certain that the district court's admiralty jurisdiction was invoked. *See Trentacosta*, 813 F.2d at 1559–60 (plaintiff invoked the law side rather than the admiralty side of the district court where complaint asserted jurisdiction under the Jones Act and federal question jurisdiction, prayed for jury trial, and failed to assert admiralty jurisdiction or reference to Rule 9(h)); *Borne*, 755 F.2d at 1133 (plaintiff did not invoke admiralty jurisdiction where complaint asserted jurisdiction under the Jones Act and general maritime law, prayed for jury trial, and failed to cite or otherwise reference Rule 9(h)).

The circumstances changed, however, with the filing of the Third

---

either an admiralty or a legal forum under the saving to suitors clause. 28 U.S.C. § 1333. The Federal Rules [of Civil Procedure] preserve this right by allowing the plaintiff to designate his action as one in admiralty or to treat it as a civil action. Fed.R.Civ.P. 9(h)." *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1215 (5th Cir.1986) (footnote omitted); accord *Linton*, 964 F.2d at 1490 (quoting *Rachal*); *Texas Menhaden Co. v. Palermo*, 329 F.2d 579, 580

(5th Cir.1964) (per curiam); *Yates v. Dann*, 223 F.2d 64, 66 (3d Cir.1955). Thus, as with general admiralty and maritime claims, the Jones Act "effectively gives an injured seaman the litigation options of (1) suing directly under the federal courts' general admiralty jurisdiction or (2) suing for damages at law, in either (a) state court or (b) a federal district court under the Jones Act." 14A WRIGHT ET AL., *supra* § 3677, at 470–71 (footnotes omitted).

Amended Complaint, which asserts that jurisdiction is under the Jones Act and "under the General Admiralty and Maritime Law as an Action in Admiralty under F.R.C.P. Rule 9(h)...."[6] The final paragraph of the Third Amended Complaint nevertheless contains a jury demand. This may be significant, as "[o]ne important factor in determining whether a claimant has elected to proceed in admiralty is whether he demanded a jury trial." *Concordia*, 115 F.3d at 72 (citations omitted). Such an election is important because a plaintiff that invokes admiralty jurisdiction is not entitled to a jury trial. *See* Fed. R.Civ.P. 38(e); *Concordia*, 115 F.3d at 70–71; *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998). Accordingly, the absence of a demand for a jury trial suggests that a plaintiff with an admiralty claim intends to proceed under admiralty jurisdiction, whereas the inclusion of such a demand suggests that the plaintiff intends to proceed at law. *See Rachal*, 795 F.2d 1210 (initial complaint with a claim under the Jones Act, a claim under general maritime law, and a jury demand was deemed to be an action at law, while amended complaint that designated the case under Rule 9(h) and did not have jury demand invoked admiralty jurisdiction). Because neither the magistrate judge nor the district court mentioned this potential inconsistency, we will look to the "totality of the circumstances," *Bodden*, 879 F.2d at 186, in order to resolve this apparent contradiction.

Wingerter's motion for leave to file the Third Amended Complaint specifically states that he sought "leave to amend his complaint to designate his action as being one in Admiralty under F.R.C.P. Rule 9(h), thereby waiving his right to trial by jury." Plaintiff's Motion for Leave to file Third Amended Complaint at 1. Wingerter then asserts that the district court had federal question subject matter jurisdiction under the Jones Act, but that he had the option of bringing the suit as one in admiralty or as one at law. *Id.* at 2. Despite Wingerter's express retraction of his jury demand in his motion for leave to file the Third Amended Complaint, the Third Amended Complaint nevertheless contains a jury demand in the final paragraph. The question, then, is which portion of the Third Amended Complaint should prevail.

Each of the complaints contained identical language in the jurisdictional allegation until the Third Amended Complaint, where Wingerter added a Rule 9(h) designation. Wingerter even underlined the additional language to highlight it for the district court. The motion for leave to file the Third Amended Complaint evinces Wingerter's clear intent to designate the action as one in admiralty under Fed.R.Civ.P. 9(h) and to have his case tried under the district court's admiralty jurisdiction, and the Third Amended Complaint makes the same designation. Furthermore, in the Joint Final Pre-trial Order, jurisdiction is stated as follows:

> A. This is an action for maritime personal injury pursuant to the Jones Act (46 U.S.C. § 688) and the General Admiralty and Maritime Law of the United States, seeking monetary and compensatory damages, maintenance, cure and unearned wages.

**6.** Wingerter's jurisdictional allegations are as follows: "Jurisdiction is founded under the Jones Act (46 USC 688) for negligence, and under the General Admiralty and Maritime Law as an Action in Admiralty under F.R.C.P. Rule 9(h) for unseaworthiness, maintenance, cure, wages and punitive damages." Plaintiff's Third Amended Complaint at ¶ 2 (emphasis in original).

The original, First Amended, and Second Amended Complaints each contained the following jurisdictional allegations: "Jurisdiction is founded under the Jones Act (46 USC 688) for negligence, and under the General Admiralty and Maritime Law for unseaworthiness, maintenance, cure, wages and punitive damages." Complaint at ¶ 2, First Amended Complaint at ¶ 2, Second Amended Complaint at ¶ 2.

B. The jurisdiction of the Court is not disputed, and is founded upon 28 U.S.C. § 1333.

Joint Final Pre–Trial Order at 3, § II. See Foulk, 144 F.3d at 257 (relying on the final pre-trial order which stated that " 'The jurisdiction of the Court arises under Admiralty Law as modified by the Jones Act' " as a manifestation of the parties' intent to proceed under admiralty jurisdiction). Chester expressly objected to Wingerter's election to proceed without a jury. Joint Final Pre–Trial Order at 6–7, § X.

Based on the foregoing, we find that in the Third Amended Complaint Wingerter intended and elected to proceed under admiralty jurisdiction, that he properly made his election by referencing Rule 9(h), and that although Chester objected to Wingerter's election, Chester recognized that Wingerter had made the election. See Noble Drilling, 64 F.3d at 195 (admiralty jurisdiction invoked where counterclaim referenced Rule 9(h), made claims under Jones Act and general maritime law, and made no jury demand). It therefore appears that counsel for Wingerter merely forgot to delete the jury demand when he tendered the Third Amended Complaint for filing, and that the jury demand at the end of the Third Amended Complaint is there by mistake and inadvertence; accordingly, we will treat it as such. See Bodden, 879 F.2d at 186 ("Generally, merely requesting a jury trial does not change an admiralty claim, identified as such, to a nonadmiralty claim. In such cases the district court should simply deny the request") (citing T.N.T. Marine, 702 F.2d at 585). Therefore, under the totality of the circumstances, and consistent with cases such as Foulk, 144 F.3d at 257, Baris, 932 F.2d at 1547, Bodden, 879 F.2d at 186, T.N.T. Marine, 702 F.2d at 587–88, and Alleman, 756 F.2d at 345, we conclude that the Third Amended Complaint properly invokes the district court's admiralty jurisdiction, that the jury demand is a nullity, and that the first prerequisite to invocation of § 1292(a)(3) is therefore satisfied.[7]

## 2. Interlocutory Order

The second prerequisite for the application of § 1292(a)(3) is that the order appealed from must be an interlocutory order. Because we have already determined that the orders at issue were not final orders, see Analysis, part A, supra, they must be interlocutory in nature. Therefore, the second prerequisite to invocation of § 1292(a)(3) is satisfied.

## 3. Rights and Liabilities

The final prerequisite for application of § 1292(a)(3) is that the order must have determined "the rights and liabilities of the parties." 28 U.S.C. § 1292(a)(3). This phrase "has been repeatedly interpreted to require a decision on the merits of the claims or defenses underlying the dispute as a predicate for jurisdiction." City of Fort Madison v. Emerald Lady, 990 F.2d 1086, 1089 (8th Cir.1993) (citations omitted); accord Pickle v. Char Lee Seafood, Inc., 174 F.3d 444, 448 n. 1 (4th Cir.1999) (§ 1292(a)(3) does not apply to procedural determinations such as a consolidation order) (citations omitted); Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked, and Abandoned Steam Vessel, 833 F.2d 1059, 1063 (1st Cir.1987) ("the ruling must be on the merits; it must determine substantive rights, as opposed to merely procedural, tactical, or adjectival entitlements"); see also Columbus–America Discovery Group v. Atlantic Mut. Ins. Co., 56 F.3d 556, 562 n. 6 (4th Cir.) (citing Martha's Vineyard), cert. denied, 516 U.S. 938, 116 S.Ct. 352, 133 L.Ed.2d 248 (1995). The vast majority of courts construe § 1292(a)(3) strictly and narrowly. See,

---

7. Because this Court has concluded that it lacks appellate jurisdiction, we do not address whether the magistrate judge was correct in allowing Wingerter leave to file the Third Amended Complaint, whether the district court was correct in upholding the magistrate judge's ruling, or the issues raised with respect to the right to a jury trial.

*e.g., Allen v. Okam Holdings, Inc.,* 116 F.3d 153, 154 (5th Cir.1997) (per curiam) (citing *In re Ingram Towing Co.,* 59 F.3d 513, 515 (5th Cir.1995)); *Evergreen Int'l (USA) Corp. v. Standard Warehouse,* 33 F.3d 420, 424 (4th Cir.1994); *City of Fort Madison,* 990 F.2d at 1088; *Burgbacher v. University of Pittsburgh,* 860 F.2d 87, 88 (3d Cir.1988); *Martha's Vineyard,* 833 F.2d at 1063; *Seattle–First Nat'l Bank v. Bluewater Partnership,* 772 F.2d 565, 568 (9th Cir.1985); *Tradax Ltd. v. M.V. Holendrecht,* 550 F.2d 1337, 1340 (2d Cir.1977). *But cf. Walter E. Heller and Co. v. O/S Sonny V.,* 595 F.2d 968, 971 (5th Cir.1979) ("The term 'interlocutory decrees' in section 1292(a)(3) is broadly interpreted").[8]

Three inter-related grounds have been advanced to support a strict and narrow construction of § 1292(a)(3): legislative intent, a general reluctance to erode the final judgment rule, and the historical origin of the statute. First, the Supreme Court, in analyzing a predecessor to § 1292(a)(3), concluded that "Congress did not intend to make appealable any other interlocutory decrees in admiralty. Moreover, there is nothing to indicate that Congress intended to allow repeated appeals in [admiralty] cases.... That would be contrary to its long-established policy." *Schoenamsgruber v. Hamburg American Line,* 294 U.S. 454, 458, 55 S.Ct. 475, 79 L.Ed. 989 (1935) (footnote omitted). Following *Schoenamsgruber,* courts have consistently construed § 1292(a)(3) narrowly based on the Supreme Court's determination that Congress did not intend for it to be broadly construed. *See, e.g., St. Louis Shipbuilding & Steel Co. v. Petroleum Barge Co.,* 249 F.2d 905, 906 (8th Cir.1957) (citing *Schoenamsgruber*); *United States v. The Lake George,* 224 F.2d 117, 118–19 (3d Cir.1955) (citing *Schoenamsgruber*). *See also In re Wills Lines, Inc.,* 227 F.2d

509, 510 (2d Cir.1955) ("When, by amendment in 1926, certain interlocutory appeals were permitted in admiralty cases, it was not contemplated that the dockets of appellate courts in the federal system should be burdened with all the odds and ends of interlocutory orders, most or all of which would in any event be reviewable on an appeal by an aggrieved party from a final decree"), *cert. denied,* 351 U.S. 917, 76 S.Ct. 709, 100 L.Ed. 1450 (1956).

Second, many courts construe § 1292(a)(3) strictly and narrowly because it is an exception to the final judgment rule. *See, e.g., Allen,* 116 F.3d at 154 (citing *Ingram Towing,* 59 F.3d at 515); *Evergreen,* 33 F.3d at 424; *City of Fort Madison,* 990 F.2d at 1088; *Martha's Vineyard,* 833 F.2d at 1063; *Tradax,* 550 F.2d at 1340; *Burgbacher,* 860 F.2d at 88; *Seattle–First Nat'l Bank,* 772 F.2d at 568. Although this Court has not said so with respect to § 1292(a)(3) specifically, we have indicated a general reluctance to expand the opportunities for interlocutory appeal. *See, e.g., Blair v. Equifax Check Serv., Inc.,* 1999 WL 415504, at *3 (7th Cir. Jun.22, 1999) ("a principal reason why interlocutory appeals are so disfavored in the federal system" is because they interrupt the progress of a case and prolong its disposition); *Bogard,* 159 F.3d at 1063 ("to allow all procedural rulings... to be immediately appealable would threaten an avalanche of interlocutory appeals"); *Herdrich,* 154 F.3d at 367–68 ("Generally speaking, interlocutory appeals are disfavored...").

The third reason for a strict and narrow construction can be traced to the historical manner in which admiralty cases were processed:

---

8. *See also Evergreen,* 33 F.3d at 424 n. 1 (compiling cases that have not adhered to a strict interpretation of § 1292(a)(3)). *But cf. City of Fort Madison,* 990 F.2d at 1089–90 (noting that although some courts have employed a more liberal approach, they still ad-

hered to "the requirement of a dispositive decision on the underlying merits of some claim, or at least a decision somehow dispositive of the right to recover, as a prerequisite of section 1292(a)(3) jurisdiction").

The context in which section 1292(a)(3) was enacted makes clear that this [strict and narrow] interpretation of the statute is correct. In admiralty, trials were traditionally bifurcated. First there would be a trial before the court on the issue of liability. If there was a finding of liability, there would then be a separate hearing before a special master to ascertain damages. These damages hearings were often both lengthy and costly. Congress intended 28 U.S.C. § 1292(a)(3) to permit parties to appeal the finding of liability on the merits, before undergoing the long, burdensome, and perhaps unnecessary damages proceeding. Section 1292(a)(3) was not intended to clutter the federal docket with interlocutory "odds and ends."

*City of Fort Madison*, 990 F.2d at 1089 (citing *St. Louis Shipbuilding*, 249 F.2d at 908 (quoting *Stark v. Texas Co.*, 88 F.2d 182, 183 (5th Cir.1937)))); *Evergreen*, 33 F.3d at 424 (quoting *City of Fort Madison*). Therefore, "the usual interlocutory appeal under section 1292(a)(3) is from an order finally determining that one party is liable to another and referring the cause to an assessor for the determination of damages." *In re S.S. Tropic Breeze*, 456 F.2d 137, 139 (1st Cir.1972) (citations omitted). *Accord The Lake George*, 224 F.2d at 118 ("The classic example of [§ 1292(a)(3)'s] day-to-day operation is presented when there is a determination of liability as distinguished from amount, it being a part of the admiralty tradition to refer the question of damages to a commissioner") (citation omitted). *See also In re Nautilus Motor Tanker Co., Ltd.*, 85 F.3d 105, 110 n. 3 (3d Cir.1996); *Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 77 F.3d 376, 377–78 (11th Cir.1996) (per curiam); *Noble Drilling*, 64 F.3d at 194; *Ingram Towing*, 59 F.3d at 516; *Jamaica Commodity Trading Co. v. Barge Hercules*, 992 F.2d 1162, 1163 (11th Cir.1993) (per curiam); *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1297 (2d Cir.1990); *Martha's Vineyard*, 833 F.2d at

1063; *Seattle–First Nat'l Bank*, 772 F.2d at 568.

■ The Fourth Circuit has noted that [o]ver time, however, this narrow scenario that justified the initial enactment of the provision has fallen into desuetude, while parties have attempted to use the provision to support interlocutory appeals in many situations that do not supply the same logical justification for an exception to the finality rule. While in many instances courts have read the provision narrowly and declined to find jurisdiction, in many other instances courts have read the statute more broadly and found jurisdiction in situations far different from that giving rise to the provision in the first place.

*Evergreen*, 33 F.3d at 424 & n. 1 (collecting cases). Because we have been unable to find any decision of this Court on this specific issue regarding the construction of § 1292(a)(3), it is one of first impression. With that understanding, we agree with and adopt the Fourth Circuit's position that "the better course... is to construe this exceptive statute narrowly, and thus limit the statute's special treatment to the special circumstances that justified its inception." *Id.* at 425. *Accord Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 751 (5th Cir.1985) ("Although § 1292(a)(3) is to be construed narrowly, ... the provision should be applied to achieve its original purpose of allowing the final determination of liability among the parties before the computation of damages") (citations omitted).

In this case, Chester contends that the district court's order determined Chester's rights and liabilities because the effect of allowing the Third Amended Complaint to be filed was that the trial would be a bench trial rather than a jury trial. Chester asserts that it has a substantive right to a jury trial, and that the loss of that right is determinative of its rights and liabilities such that immediate interlocutory appeal under § 1292(a)(3) is warrant-

ed. We disagree.[9] Neither the magistrate judge's order nor the district court's order determined the rights and liabilities of the parties. Rather, the district court's order was merely a procedural order that disposed of Chester's motion to reconsider the magistrate judge's ministerial grant of leave to file the Third Amended Complaint. *See Emerick v. Lambert*, 187 F.2d 786, 788 (6th Cir.1951) ("It is clear enough that all the orders appealed from were preliminary steps to bring both actions to final issue and determination"); *see also Bogard*, 159 F.3d at 1063; *Mitsubishi*, 102 F.3d at 871. There was no determination that Chester was liable to Wingerter, nor was there any determination on the merits of Wingerter's claims. Although it is true that the consequence of allowing the Third Amended Complaint to be filed was that the case was designated as one in admiralty and that it would therefore proceed to a bench trial rather than a jury trial, that consequence is irrelevant for our purposes. *See Ingram Towing*, 59 F.3d at 517 ("Orders which do not determine parties' substantive rights or liabilities, however, are not appealable under section 1292(a)(3) even if those orders have important procedural consequences") (internal quotations and citations omitted). We therefore conclude that the magistrate judge's order and the district court's order did not determine the rights and liabilities of the parties.

Other courts have reached the same conclusion in similar circumstances. In *La Capria v. Compagnie Maritime Belge*, the Second Circuit concluded that an order granting leave to file an amended complaint which would designate the action as one in admiralty was not an interlocutory order that determined the rights and liabilities of the parties. *La Capria*, 373 F.2d at 581. In *Emerick v. Lambert*, the Sixth Circuit concluded that an appeal

from orders that set a matter for jury trial, consolidated two actions, refused to prevent a party from conducting other proceedings, and lifted a stay of proceedings did not determine the rights and liabilities of the parties. *Emerick*, 187 F.2d at 788. The court went on to hold that

> [i]t is clear enough that all the orders appealed from were preliminary steps to bring both actions to final issue and determination. Whether they, or any of them, should or should not have been granted is not for our determination now. To allow appeals from every ruling of the court from the beginning would be to clog the wheels of justice. The "rights and liabilities of the parties," and by rights and liabilities we mean the merits of the controversies between them have not been determined in the District Court and upon the face of the record could not be by any decision we might make.

*Id.* Finally, in *Ore Navigation Corp. v. Thomsen*, the Fourth Circuit concluded that an appeal from an order that transferred the case from the admiralty side of the district court to the law side for a trial by jury did not constitute a final decision and did not determine the rights and liabilities of the parties. *Ore Navigation Corp.*, 256 F.2d 447, 449 (4th Cir.1958) (per curiam). Therefore, because we hold that an order granting leave to file an amended complaint in an admiralty case does not determine the rights and liabilities of the parties,[10] § 1292(a)(3) does not supply appellate jurisdiction in this case.

### Conclusion

To sum up, we have determined that the orders at issue are not final decisions within the meaning of § 1291. We have also determined that the orders do not fall under the collateral order doctrine. Finally, we have determined that because the

---

9. Because we hold that we lack jurisdiction to hear this appeal, we will not address the merits of Chester's argument regarding its right to a jury trial.

10. Of course, the same holds true for an order denying reconsideration of that underlying order granting leave to file the amended complaint.

orders did not resolve the rights and liabilities of the parties, interlocutory appeal under § 1292(a)(3) is not available. As a result, we lack jurisdiction to review the orders concerning the motion for leave to file the Third Amended Complaint.

APPEAL DISMISSED.