Russell SMITH, Plaintiff,

v.

STATE OF INDIANA, County of Cass, City of Logansport, Ron Calley, Sheriff of Cass County, Lt. John Huff, Capt. Wayne Erwin, OFC. Jeff Schnepp, Sgt. Mark Day, OFC. Sherman Fisher, Ruben Calisto, M.D., and John Does I–V, Defendants.

No. 3:95 cv 607 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 27, 1995.

Michael P. Ewing, Gregg J. Stark, Rosenthal and Stark, Indianapolis, IN, for Russell Smith.

Robert T. Keen, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, Patrick J. Reynolds, Sr., Modesto Reynolds and McDermott, Chicago, IL, for County of Cass, City of Logansport, Ron Calley, Sheriff of Cass County, John Huff, Wayne Erwin, Jeff Schnepp, and Mark Day.

Ronald J. Semler, Michael R. Morow, Stephenson Daly Morow and Kurnik, Indianapolis, IN, Jeffry G. Price, Peru, IN, for Sherman Fisher.

Larry R. Fisher, Stuart and Branigin, Lafayette, IN, for Dr. Calisto.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On October 4, 1995, the defendant, Ruben Calisto, M.D., filed a Motion to Dismiss the plaintiff's complaint as to that defendant for failure to comply with the Indiana Medical Malpractice Act. In its Order dated October 12, 1995, this court ruled that pursuant to Rule 56, Fed.R.Civ.P., the filing of an affidavit in support of the Motion to Dismiss required that the defendant's motion be treated as a Motion for Summary Judgment. The court has carefully considered the defendant's memorandum and supporting affidavit, and now finds that the defendant's motion must be denied.

## BACKGROUND

On or about July 21, 1993, plaintiff Russell Smith was awakened at his rural Cass County residence by members of the Cass County Sheriffs Department and the Logansport and Peru police departments. He was arrested and taken into custody clad in a T-shirt and a blanket to cover his lower extremities. Mr. Smith is a paraplegic who, according to his complaint, requires daily medication for back pain, a spastic bladder, stomach problems, leg circulation, anemia, muscle spasms in his legs, and other ailments. In addition, the plaintiff claims to need other medical supplies to enable him to maintain sterile conditions at the location of a catheter and for disability-related open skin wounds.

The plaintiff complains that following his apprehension, he was left unattended for approximately twelve hours in the Cass County Jail. Specifically, the plaintiff alleges that "[f]rom the time of his apprehension and throughout the entire length of his incarceration," the defendants in this action "continuously and intentionally deprived [him] of all assistance based upon his status as a paraplegic." Complaint at 6. The complaint, as it relates to this defendant, alleges that Dr. Calisto, while acting under color of law in his capacity as jail physician at the Cass County Jail, failed to provide the plaintiff with the required medical care in violation of the plaintiff's rights under Title One of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. The defendant asserts that because the plaintiff failed to present his claim against Dr. Calisto to a medical review panel pursuant to the provisions of the Indiana Medical Malpractice Act, see Ind. Code Ann. § 27–12–8–1 et seq., the court lacks subject matter jurisdiction to address the plaintiff's allegations of medical malpractice. The plaintiff has filed no response to the defendant's Motion for Summary Judgment.

## SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Russo v. Health, Welfare & Pension Fund, Local 705, 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Celotex addressed the initial burdens of the parties under Rule 56, and Anderson addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Once the

moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991). Neither may the nonmoving party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55, 106 S.Ct. at 2512–14.

The 1986 Supreme Court trilogy was recently reexamined in *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Kodak* is that it did not tinker with *Celotex* and *Anderson,* and possibly involves an attempt to clarify *Matsushita.* This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441 (1992).

### DISCUSSION

■ Under the Indiana Medical Malpractice Act, "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel under IC 27–12–10; and (2) an opinion is given by the panel." Ind.Code Ann. § 27–12–8–4 (West Supp.1995). According to the sworn deposition of the Deputy Commissioner of Dedicated Funds for the Department of Insurance of the State of Indiana, no medical review panel has been convened to review the plaintiff's complaint against Dr. Calisto, and no opinion has been rendered. The Deputy Commissioner's Affidavit shows that at the time of the alleged act(s) of malpractice in the present case, Dr. Calisto was a health care provider pursuant to the definition found at Ind.Code § 27–12–2–14(1), was insured by medical malpractice liability insurance in an amount appropriate under Ind.Code § 27–12–4–1, and had paid the requisite surcharge provided for by Ind. Code § 27–12–5–1. Additionally, the acts or omissions complained of here meet the Act's definition of "health care." The Act states that "'[h]ealth care' means an act or treatment ... that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's ... confinement." Ind.Code § 27–12–2–13. Finally, the plaintiff was a "patient" pursuant to the Act, which states that "'[p]atient' means an individual who ... should have received health care from a health care provider, under a contract, express or implied." *Id.* § 27–12–2–22.

The question remains, however, whether the state statutory provisions are applicable to a complaint such as the present one, brought in a federal district court in Indiana under federal question jurisdiction pursuant to 28 U.S.C. § 1331. The plain language of the statute states that "an action against a health care provider may not be commenced *in a court in Indiana.*" Ind.Code § 27–12–8–4 (emphasis added). Therefore, if the language of the Act is given its literal meaning, the plaintiff may not maintain a claim under the Act in a federal district court sitting in Indiana without first submitting the claim to a medical review panel. Clearly, as this court held in *Hines v. Elkhart Gen. Hosp.,* 465 F.Supp. 421 (N.D.Ind.), *aff'd,* 603 F.2d 646 (7th Cir.1979), where a *diversity* action involving state-created substantive rights is brought in a federal district court in Indiana, the provisions of the Act are applicable since the district court in that situation sits as a court of that state. 465 F.Supp. at 424–25; *see also Castelli v. Steele,* 700 F.Supp. 449, 455 (S.D.Ind.1988). The question here, however, is whether the claimant must comply with the provisions of the Act as a prerequi-

site to bringing an action under this court's federal question jurisdiction.

The plaintiff has stated a claim of discrimination based on his handicap under the Americans with Disabilities Act ("ADA"). The complaint alleges that the defendants violated the plaintiff's rights under Title I of the Act. As a preliminary matter, this court notes that the title selected by the plaintiff does not appear to be applicable to the facts presented here. Title I of the ADA covers employment discrimination, and the complaint does not appear to allege that the defendants discriminated against the plaintiff's disability on the basis of employment. The court assumes that the plaintiff intended to allege violations under Title II of the Act, which covers "public entities." *See Noland v. Wheatley*, 835 F.Supp. 476, 482 (N.D.Ind. 1993). The ADA defines "public entity" to include any state or local government or any department, agency, special purpose district, or other instrumentality of a State or States or local government. 42 U.S.C.A. § 12131(1) (West 1995).

The defendant's argument that the plaintiff may not bring his claim against Dr. Calisto in this court without first presenting his claim to a medical review panel is, in essence, an argument that the plaintiff must first exhaust his state administrative remedies before this court may address his federal claim. Federal courts have noted, however, that claims brought under Title II of the ADA do not require exhaustion of administration remedies. *See, e.g., Noland*, 835 F.Supp. at 482. Even if this interpretation of Title II applies only to the exhaustion of *federal* administrative remedies, and not specifically to the exhaustion of *state* administrative remedies, the defendant still cannot avoid inclusion in this action by relying upon a state law requirement. Article VI of the Constitution of the United States states that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... shall be the supreme law of the Land." The plaintiff has stated a claim against the defendant under a federal law, pursuant to this court's federal question jurisdiction under 28 U.S.C. § 1331. The defendant may not use the Indiana Medical

Malpractice Act's requirement of presentation of claims to a medical review panel as a means to trump the plaintiff's claim under federal law.

For the foregoing reasons, this court hereby DENIES defendant Calisto's Motion for Summary Judgment. **IT IS SO ORDERED.**