In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3753 and 00-3879

Janet Greenwell,

Plaintiff, Cross-Appellant,

v.

Aztar Indiana Gaming Corporation,
doing business as Aztar Casino,
Defendant, Third-Party Plaintiff/Appellant,

Cross-Appellant,

v.

Matthew B. Kern and Gregory J. Loomis,

Third-Party Defendants/Appellees.

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 98 C 211--Richard L. Young, Judge.


Argued June 6, 2001--Decided October 4, 2001


   Before Fairchild, Bauer, and Posner,
Circuit Judges.

   Posner, Circuit Judge. We have a three-
cornered dispute that raises a tangle of
jurisdictional and procedural issues. The
plaintiff, Greenwell, suffered back pain
while walking in a casino boat on which
she was employed by the owner, Aztar. (On
the origins and popularity of modern
riverboat gambling, see Lori Chapman,
"Riverboat Gambling in the Great Lakes
Region: A Pot of Gold at the End of the
Rainbow or Merely 'Fool's Gold?,'" 26 U.
Toledo L. Rev. 387, 390-91 (1995); Ronald
J. Rychlak, "The Introduction of Casino
Gambling: Public Policy and the Law," 64
Miss. L.J. 291, 309 (1995).) The boat was
afloat on a navigable waterway of the
United States in Indiana. Aztar referred
Greenwell to two doctors, Kern and
Loomis, who operated on her back--
negligently, she claims. Yet her suit,
which charges both a work-related injury
to her back and medical malpractice and
related torts in the treatment of the

injury, is not against the doctors but against Aztar. Aztar, however has impleaded the doctors, contending that they are the primary wrongdoers.

Greenwell bases federal jurisdiction primarily on the Jones Act, which applies the principles of the FELA to maritime workers, 46 U.S.C. App. sec. 688(a); Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990); Weibrecht v. Southern Illinois Transfer, Inc., 241 F.3d 875, 877 (7th Cir. 2001); Igneri v. Cie. de Transports Oceaniques, 323 F.2d 257, 266 (2d Cir. 1963), and on the admiralty doctrine of maintenance and cure, which requires a seaman's employer to provide food, lodging, and--what is relevant here-- medical services to a seaman injured while employed on the ship. Lewis v. Lewis & Clark Marine, Inc., 121 S.Ct. 993, 997 (2001); Galveston County Navigation District No. 1 v. Hopson Towing Co., 92 F.3d 353, 357 n. 8 (5th Cir. 1996); Fitzgerald v. A.L. Burbank & Co., 451 F.2d 670, 679 (2d Cir. 1971). The seaman is unlikely to have an alternative source of maintenance and cure when at sea; the doctrine thus formalizes and makes mandatory what, in its absence, would probably be a contractual undertaking by the employer. Cf. Aguilar v. Standard Oil Co., 318 U.S. 724, 730 (1943); Silmon v. Can Do II, Inc., 89 F.3d 240, 242 (5th Cir. 1996). The duty is nonwaivable, perhaps out of fear of duress against seamen who are injured, or fall sick, far from land, and so are at the mercy of their employer.

Had Greenwell's back pain been caused by an injury sustained at work, as she originally charged, and had the malpractice in treating her been committed by a doctor employed by Aztar, her employer, Aztar would have been liable in accordance with standard principles of respondeat superior. It would have been liable under both the Jones Act and the doctrine of maintenance and cure, because the malpractice would have been committed by a fellow employee acting within the scope of his employment. De Zon v. American President Lines, Ltd., 318 U.S. 660, 665-69 (1943); Fitzgerald v. A.L. Burbank & Co., supra, 451 F.2d at 679-80. Even if the doctor had been an independent contractor hired by Aztar to discharge the "cure" part of Aztar's duty of maintenance and cure,

rather than an employee, Aztar would have been liable, as explained in id. at 680. But after admitting in her deposition that she had been seeing a chiropractor about her back before experiencing back pain on board the ship, she amended her complaint to drop the charge that she had been injured at work and charged instead that Aztar had either directed her to use the incompetent doctors who operated on her or had fraudulently induced or otherwise improperly compelled her to use them. Under standard tort principles (see, e.g., Reed v. Bascon, 530 N.E.2d 417, 420-21 (Ill. 1988)) that are equally applicable to maritime cases, Aztar would be liable, not vicariously but as a negligent actor, if it steered Greenwell to doctors who it knew or should have known were incompetent. Fitzgerald v. A.L. Burbank & Co., supra, 451 F.2d at 679; cf. Barbetta v. S/S Bermuda Star, 848 F.2d 1364, 1369 (5th Cir. 1988).

That's a big "if." Steering a patient to a doctor who commits malpractice is not itself malpractice or otherwise tortious unless the steerer believes or should realize that the doctor is substandard, and that is not claimed. Yet the district judge, instead of dismissing the malpractice claim on the merits and therefore with prejudice, dismissed it without prejudice. He thought it merely premature, because Greenwell hadn't completed the precomplaint review procedure to which Indiana subjects claims of medical malpractice. Ind. Code sec. 34-18-8-4; Hill v. Porter Memorial Hospital, 90 F.3d 220, 222 (7th Cir. 1996); Sherrow v. GYN, Ltd., 745 N.E.2d 880, 884 (Ind. App. 2001). The judge also dismissed Aztar's third-party claim against the doctors.

Both dismissals are interlocutory, because the remainder of Greenwell's complaint, consisting of fraud claims against Aztar that invoke the district court's supplemental jurisdiction, 28 U.S.C. sec. 1367, remains pending in the district court. The general rule in the federal system is that only final judgments are appealable. 28 U.S.C. sec. 1291. The judge purported to make the dismissals appealable by entering partial final judgments under Fed. R. Civ. P. 54(b). This was improper with respect to the dismissal of Greenwell's claims. Rule 54(b) can be used only to enter judgment

"as to one or more but fewer than all of the claims or parties," with "claim" defined to include all legal grounds that are based on closely related facts. Indiana Harbor Belt R.R. v. American Cyanamid Co., 860 F.2d 1441, 1444 (7th Cir. 1988). The retained fraud claims overlap the dismissed claims too closely to satisfy this criterion. In contrast, the dismissal of the third-party claim let the doctors out of the case, thus satisfying the "fewer than all of the . . . parties" provision of Rule 54(b) and making that dismissal a final, immediately appealable judgment. So their appeal is secure.

Now it is true that interlocutory appeals are authorized in admiralty cases by 28 U.S.C. sec. 1292(a)(3), but this route isn't open to Greenwell either, and for two reasons. First, as we'll see, Greenwell failed to invoke admiralty procedures, Continental Casualty Co. v. Anderson Excavating & Wrecking Co., 189 F.3d 512, 517 (7th Cir. 1999), and second, the only interlocutory appeals that fall within section 1292(a)(3) are those that "determin[e] the rights and liabilities of the parties." This language has been interpreted to exclude procedural orders, Wingerter v. Chester Quarry Co., 185 F.3d 657, 668-70 (7th Cir. 1999) (per curiam); Sea Lane Bahamas Ltd. v. Europa Cruises Corp., 188 F.3d 1317, 1321-22 (11th Cir. 1999), such as the order in this case dismissing Greenwell's claim for failure to exhaust administrative remedies. It's a sensible interpretation. A rule allowing all interlocutory orders to be immediately appealable would flood us with appeals. Anyway the purpose of the special admiralty appeal statute is merely to allow the determination of liability to be appealed without awaiting the determination of damages, Beluga Holding, Ltd. v. Commerce Capital Corp., 212 F.3d 1199, 1203 (11th Cir. 2000), consistent with the historic admiralty practice (now of course widely imitated in ordinary civil cases as well) of trying liability and damages separately. Wingerter v. Chester Quarry Co., supra, 185 F.3d at 670.

That leaves only one route for Greenwell's appeal: the doctrine of pendent appellate jurisdiction. The dismissal of Aztar's third-party

complaint against the doctors is appealable by virtue of Fed. R. Civ. P. 54(b), as we have said, and Greenwell's appeal is closely related to it. But after the Supreme Court questioned the existence of the doctrine in Swint v. Chambers County Commission, 514 U.S. 35, 43-51 (1995), we turned skittish, describing it as a "controversial and embattled doctrine" in United States v. Board of School Commissioners, 128 F.3d 507, 510 (7th Cir. 1997), and invoking it not a single time in the six years after Swint was decided. Yet the doctrine clearly still lives, for it has been invoked by the Supreme Court since Swint, in Clinton v. Jones, 520 U.S. 681, 707 n. 41 (1997), where the Court said that "the Court of Appeals correctly found that pendent appellate jurisdiction over this issue was proper." Cf. Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 770 n. 2 (2000). It has also been invoked by our sister circuits. See Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes, No. 00-40088, 2001 WL 902139, at *3 (5th Cir. Aug. 27, 2001); Streit v. County of Los Angeles, 236 F.3d 552, 559 (9th Cir. 2001); In re Stoltz, 197 F.3d 625, 629 (2d Cir. 1999); Twelve John Does v. District of Columbia, 117 F.3d 571, 574-75 (D.C. Cir. 1997). This is an apt case for the use of the doctrine. Greenwell's malpractice claim against Aztar is entwined with Aztar's indemnity claim against the doctors (Greenwell is trying to hold Aztar liable for the doctors' acts, and indemnity depends on whether she succeeds), and since we must decide the latter, we might as well decide the former at the same time and head off a second appeal--so this is one of those cases in which allowing an interlocutory appeal prevents rather than produces piecemeal appeals, while if the liability and indemnity issues did not overlap there would be only a limited economy from deciding them in one rather than two appeals. And though the special admiralty appeal statute is not applicable, it reflects a relaxed view of finality hospitable to a doctrine that enables certain interlocutory orders to be brought up to the court of appeals earlier than they could be in an ordinary civil case. Pendent appellate jurisdiction is that doctrine.

So we can proceed to the merits, where

we first observe that the district judge erred in dismissing Greenwell's claim on the basis of the Indiana medical-review statute. The statute governs claims under Indiana law (thus including diversity suits, Jones v. Griffith, 870 F.2d 1363, 1367-68 (7th Cir. 1989); Hines v. Elkhart General Hospital, 603 F.2d 646-47 (7th Cir. 1979)), not claims under federal law, as correctly noted in Smith v. Indiana, 904 F. Supp. 877, 879-80 (N.D. Ind. 1995). The judge should have dismissed the claim, all right, but on the merits.

There is an anterior question, however, of whether Greenwell successfully invoked federal admiralty jurisdiction. Her contention that Aztar violated its duty of maintenance and cure by steering her to the doctors who operated on her establishes a maritime connection: she's a maritime employee and Aztar a maritime employer. At one time no more would have been necessary to place the case within the admiralty jurisdiction. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531-34 (1995); The Plymouth, 70 U.S. (3 Wall.) 20, 36 (1866). But now a substantial relationship between the alleged tort and some traditional maritime activity must also be shown. Sisson v. Ruby, 497 U.S. 358, 364-67 (1990); East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864 (1986); Foremost Ins. Co. v. Richardson, 457 U.S. 668, 673-75 (1982); Mink v. Genmar Industries, Inc., 29 F.3d 1543, 1545 (11th Cir. 1994). That element is missing here, just as it would be if Greenwell were complaining that an employee of Aztar had broken into her house and poisoned her goldfish. Remember that it's not argued that Aztar knew or had reason to believe that the doctors were incompetent. The referral was innocent, and the alleged negligence of the doctors unforeseeable. Jutzi-Johnson v. United States, No. 00-2411, 2001 WL 1002736 at *2-4 (7th Cir. Sept. 4, 2001); Beul v. ASSE International, Inc., 233 F.3d 441, 447 (7th Cir. 2000). In any event, neither in the goldfish case nor in our case is there enough of a maritime flavor to warrant trundling out a body of law designed to regulate maritime accidents, which is the distinction (between an adventitious and an organic relation to maritime activity) that explains why the Supreme Court added the

"substantial relationship" test for determining whether there is admiralty jurisdiction. Palmer v. Fayard Moving & Transportation Corp., 930 F.2d 437, 440 (5th Cir. 1991); In re Complaint of Paradise Holdings, Inc., 795 F.2d 756, 759-60 (9th Cir. 1986). The ordinary law of medical malpractice is adequate to deal with the consequences of the operation by medical landlubbers on Greenwell's back for a condition that preexisted her maritime employment.

But jurisdiction depends on the facts as they appear when the complaint is filed. Keene Corp. v. United States, 508 U.S. 200, 207 (1993); Mullen v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824); Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1508 (7th Cir. 1991). Remember that Greenwell initially charged that she had been injured at work. That would have brought the case within range, at least, of the doctrine of maintenance and cure. When she dropped that charge, her claim of maintenance and cure evaporated, because the duty of cure is limited to injuries and illnesses that occur on the job. But it evaporated because of a failure of proof, not because of a failure of jurisdiction.

As for Greenwell's claim under the Jones Act, a claim within the federal-question jurisdiction of the district court, it too evaporated because of facts that emerged after the complaint was filed: that the doctors who operated on her were neither employees of the defendant nor acting on behalf of Aztar, thus eliminating any basis for vicarious liability, and that Aztar was not negligent in selecting them, thus eliminating any basis for holding it directly liable for the consequences of the operation on Greenwell's back. More fundamentally, the Jones Act, like the doctrine of maintenance and cure, Braen v. Pfeifer Oil Transportation Co., 361 U.S. 129, 132-33 (1959), is limited to injuries that occur "in the course of [the seaman's] employment," 46 U.S.C. App. sec. 688(a), and Greenwell's did not.

The district judge mistakenly thought that Greenwell had a viable federal admiralty or Jones Act claim, just one that was premature. Let us now consider

whether he was also mistaken in believing that Aztar could not implead the doctors under the admiralty impleader rule, Fed. R. Civ. P. 14(c), a rule "designed to expedite and consolidate admiralty actions by permitting a third-party plaintiff to demand judgment against a third-party defendant in favor of the plaintiff." Texaco Exploration & Production Co. v. AmClyde Engineered Products Co., 243 F.3d 906, 910 (5th Cir. 2001). "In an admiralty suit, once a defendant impleads a third party in an effort to shift the burden of liability in whole or part from its own shoulders, and demands judgment in favor of the original plaintiff against that third party, the suit proceeds as if the original plaintiff had sued the third party." Rodi Yachts, Inc. v. National Marine, Inc., 984 F.2d 880, 882 (7th Cir. 1993). The peculiar urgency of many admiralty cases explains the rule. Admiralty proceedings typically are in rem, meaning that, through the fiction that the ship itself is the defendant, the ship is made security for the payment of any damages assessed against its owner; it might be too difficult to obtain jurisdiction over the owner, who might be thousands of miles away. Oliver Wendell Holmes, Jr., The Common Law 28 (1881). But with the right to seize the ship to secure the payment of damages comes a correlative obligation on the part of the court to expedite the case so that the ship isn't held in port indefinitely with its cargo rotting or otherwise going to waste, or is allowed to sail away beyond the court's reach.

The district judge's ground for refusing to permit Aztar to use Rule 14(c) was that Greenwell had failed to designate her claim as an admiralty claim under Fed. R. Civ. P. 9(h). Rule 14(c) permits its special impleader procedure (as well as the special statute permitting certain interlocutory appeals in admiralty cases) only "when a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h)." The distinction is between a case being within the admiralty jurisdiction and the special admiralty procedures being applicable to the case.

So we go to Rule 9(h) and discover there that a pleading which sets forth a claim for relief that is within both the admiralty jurisdiction and some other

grant of federal jurisdiction, as is the case here (where there is both a maintenance and cure claim and a Jones Act claim), "may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rule 14(c) [and other special admiralty rules]." The purpose is to enable the plaintiff to notify his opponent and the court that he's invoking those rules, Carey v. Bahama Cruise Lines, 864 F.2d 201, 206 (1st Cir. 1988); Romero v. Bethlehem Steel Corp., 515 F.2d 1249, 1252-54 (5th Cir. 1975), when, having another basis for federal jurisdiction, he could just rely on the ordinary civil rules. If he doesn't so indicate, by means of the statement or otherwise, Wingerter v. Chester Quarry Co., supra, 185 F.3d at 665-68; Foulk v. Donjon Marine Co., 144 F.3d 252, 256 (3d Cir. 1998); Teal v. Eagle Fleet, Inc., 933 F.2d 341, 345 (5th Cir. 1991) (per curiam), the case proceeds under the ordinary civil rules. Since the plaintiff by thus forgoing the use of the admiralty rules surrenders whatever advantages he might derive from them, there is no reason to permit the defendant to invoke them either. See Foulk v. Donjon Marine Co., supra, 144 F.3d at 257 n. 4; Harrison v. Flota Mercante Grancolombiana, S.A., 577 F.2d 968, 987 (5th Cir. 1978).

But all this is supremely unimportant in this case. For the significance of Rule 14(c) is that it permits the plaintiff to obtain relief directly from the third-party defendant, cutting out the middleman, the third-party plaintiff. If the third-party plaintiff, Aztar here, is not seeking to bow out, but is content to remain the middleman, paying the plaintiff if she obtains a judgment and then turning around and seeking reimbursement from the third-party defendants, rather than, as Rule 14(c) permits, substituting the third-party defendants (the doctors, in this case) for itself, it can use Rule 14(a), the ordinary impleader rule. Rule 14(c) drops out of the picture, see In re Oil Spill by Amoco Cadiz, 699 F.2d 909, 913 (7th Cir. 1983), and with it any concern related to Rule 9(h), to which Rule 14(a) naturally does not refer. And Rule 14(a) can be used in admiralty suits as well as in ordinary federal civil suits. Seal Offshore, Inc. v. American Standard,

Inc., 777 F.2d 1042, 1045 (5th Cir. 1985); McCune v. F. Alioto Fish Co., 597 F.2d 1244, 1246 (9th Cir. 1979).

This point is academic too, however, because Greenwell's malpractice claim (maintenance and cure and Jones Act) has to be dismissed and with it goes any claim by the malpractice defendant (Aztar) against third parties. The remaining significance of the cross-appeal is that without it Aztar could not ask us to modify the judgment in its favor against Greenwell to make it a judgment on the merits dismissing her malpractice claim with prejudice rather than a procedural order dismissing it without prejudice. El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479-82 (1999); Conover v. Lein, 87 F.3d 905, 908 (7th Cir. 1996); Bell, Boyd & Lloyd v. Tapy, 896 F.2d 1101, 1104 (7th Cir. 1990); Engleson v. Burlington Northern R.R., 972 F.2d 1038, 1042 (9th Cir. 1992).

The district court's judgment is modified to place dismissal of the malpractice claim on the merits, and as so modified is affirmed. Because the claims over which the district court had original jurisdiction have thus dropped out before trial, the court will almost certainly want to dismiss the plaintiff's supplemental claims as well. See 28 U.S.C. sec. 1367(c)(3). But that is a judgment for that court to make in the first instance.