In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 01-3831, 01-4018

DAVID JONES and SUSAN JONES,

*Plaintiffs-Appellants*,

*v.*

INFOCURE CORPORATION, *et al.*,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP01-0670 C—**John D. Tinder**, *Judge.*

ARGUED MAY 13, 2002—DECIDED NOVEMBER 8, 2002

Before ROVNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* David and Susan Jones, former owners of PRISM Data Systems, Inc. (PRISM) entered into a contract to sell PRISM to defendant InfoCure Systems, Inc., in exchange for shares of InfoCure. Unfortunately, the value of InfoCure stock took a nose-dive after the closing date of the transaction. Believing that they had been cheated, the Joneses filed suit for damages, rescission, and an injunction against InfoCure and two of its officers (to whom we refer collectively as InfoCure), alleging breach of contract, common law fraud, and

violation of the Indiana securities laws. The district court found that a clause in the agreement stipulating that it would be governed by Georgia law was enforceable; it therefore dismissed the claims based on Indiana securities law and denied the Joneses' request for a preliminary injunction. It then transferred the remaining claims to the Northern District of Georgia. On this appeal, the Joneses have attempted to challenge the merits of the district court's choice of law decision, the transfer order, and the court's denial of their requested preliminary injunction. We conclude that only the ruling on the preliminary injunction request is properly before us, and as to that, we conclude that the district court did not abuse its discretion. The rest of the Joneses' arguments can be presented in due course to the district court in Georgia.

# I

David and Susan Jones started a successful Indiana corporation, PRISM, that provided computer systems for ophthalmologists and other medical practices. In October 1999, one of InfoCure's officers approached Susan at a trade show and told her that InfoCure was interested in acquiring PRISM. The two sides began serious discussions, which culminated in an Agreement and Plan of Merger that the parties signed on December 28, 1999. Under that agreement, InfoCure promised to pay $5,000,000 for PRISM in the form of InfoCure common stock. The number of shares needed to meet the $5,000,000 price tag was to be calculated using the average stock price over the 20-day period prior to the closing. As it happened, during that time, the shares neared an all-time high; not long afterward, their value plummeted.

Unhappy about the result of the deal, which left them with shares representing a fraction of the $5,000,000 they

had expected to gain in exchange for their company, the Joneses brought this action in the Boone County Superior Court, in Indiana. In it, they alleged among other things that InfoCure violated Indiana securities laws. Relying on the diversity jurisdiction of the federal court (because the Joneses were both citizens of Indiana, Info-Cure is a Delaware corporation with its principal place of business in Georgia, the individual defendants were citizens of Alabama and Connecticut, and the amount alleged exceeded $75,000), InfoCure removed the case to the federal district court for the Southern District of Indiana. Once in federal court, InfoCure then moved to dismiss the action, or in the alternative to have it transferred to the Northern District of Georgia under 28 U.S.C. § 1404(a). The Joneses moved for a preliminary injunction to prevent InfoCure from taking various actions that were allegedly irreparably damaging PRISM, so that the value of the company would be preserved if they succeeded on their claim for rescission.

## II

The jurisdictional posture of this case is convoluted, but it is central to our disposition of this appeal. The district court denied the Joneses' request for a preliminary injunction and entered an order transferring the case to the Northern District of Georgia on October 15, 2001. In the order, it directed the clerk of the district court "to administratively effectuate this transfer." According to the Southern District of Indiana's docket, the case was closed and transferred to Georgia on October 16, 2001. The Joneses filed their notice of appeal ten days after the transfer was effectuated. On November 8, 2001, the record was returned from the Northern District of Georgia to the Southern District of Indiana "for appeal purposes." The Joneses then filed an amended notice of ap-

peal, including a challenge to the "order of transfer," on November 13, 2001. A review of the docket sheet for the Northern District of Georgia shows that the case is still considered open there, although as of May 8, 2002, the court appeared to be confining its actions to administrative matters, mostly having to do with attorney appearances.

The Joneses would like this court to review all three matters we identified above: the decision of the Indiana court to transfer the case to Georgia under § 1404(a), the underlying choice of law issue that influenced the court in its transfer decision, and its denial of preliminary injunctive relief. In general, appellate jurisdiction exists over orders denying preliminary injunctive relief. See 28 U.S.C. § 1292(a)(1); *Stewart v. Taylor*, 104 F.3d 965, 970 (7th Cir. 1997). But one question that arises is which court of appeals should exercise that jurisdiction? This case is now functionally in the Northern District of Georgia, within the Eleventh Circuit, but the order denying the injunction was entered by the court for the Southern District of Indiana, from which appeals go to this court. See 28 U.S.C. §§ 41, 1294. We discuss in a moment the consequences for our appellate jurisdiction of this sequence of events.

Jurisdiction over the transfer order and the choice of law determination that motivated it is also questionable. Normally, a decision to transfer a case from one district to another under the statutory version of *forum non conveniens* that is found in § 1404(a) is a non-reviewable interlocutory order. See *In re Joint E. & S. Dists. Asbestos Litig.*, 22 F.3d 755, 761-64 & n.14 (7th Cir. 1994). The Joneses invite this court to take a form of pendent appellate jurisdiction over the transfer order, piggy-backing on the undeniably proper appeal from the denial of the preliminary injunction. InfoCure agrees that we have jurisdiction over the preliminary injunction ruling, but it ar-

gues that there is no basis for our review of the transfer order or associated matters. (It has also made a perfunctory challenge to the plaintiffs' allegation of more than $75,000 in controversy, but we find that to be frivolous on these facts.)

### III

Generally speaking, a district court relinquishes all jurisdiction over a case when it is transferred to another district court. See *In re Joint E. & S. Dists. Asbestos Litig.*, 22 F.3d at 761-64 & n.14. The question for us is whether, as the court of appeals with jurisdiction over the transferor court, we similarly lose jurisdiction over orders entered by the district court prior to or contemporaneous with the transfer. Most cases have implicitly held that appeals from orders granting or denying preliminary injunctions properly go to the court of appeals encompassing the transferor court's district, distinguishing the appealability of the injunction order from that of the transfer order. See, *e.g.*, *United States Aluminum Corp. v. Kawneer Co., Inc.*, 694 F.2d 193, 195 (9th Cir. 1982); *Emerson Elec. Co. v. Black & Decker Mfg. Co.*, 606 F.2d 234, 237 (8th Cir. 1979); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977).

Some courts, however, have held that a § 1404(a) transfer ends the jurisdiction of both the transferor court and the corresponding appellate court at the moment when the motion has been implemented and the case has been docketed by the transferee court. See *Lou v. Belzberg*, 834 F.2d 730, 733 (9th Cir. 1987); *In re Sosa*, 712 F.2d 1479, 1480 (D.C. Cir. 1983); *In re Nine Mile Ltd.*, 673 F.2d 242, 243 (8th Cir. 1982); *In re Southwestern Mobile Homes, Inc.*, 317 F.2d 65, 66 (5th Cir. 1963); *Drabik v. Murphy*, 246 F.2d 408, 409 (2d Cir. 1957). These courts, however, seem more concerned with the review of the transfer order

itself, rather than with review of a different set of orders, such as the denial of an injunction.

We are persuaded by the cases holding that an otherwise appealable order remains appealable even if a transfer is ordered at a later time. See *TechnoSteel, LLC v. Beers Constr. Co.*, 271 F.3d 151, 153 (4th Cir. 2001). Indeed, given the language of 28 U.S.C. § 1294 it is doubtful that the court of appeals in the transferee area could exercise jurisdiction over an appealable interlocutory order entered by a district court outside its region. See, *e.g.*, *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985-87 (11th Cir. 1982) (refusing to exercise jurisdiction over a pre-transfer order from a transferee district court). See also *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 954 (10th Cir. 1989). But see, *e.g.*, *EEOC v. Northwest Airlines, Inc.*, 188 F.3d 695, 700 (6th Cir. 1999) (reviewing pre-transfer order of an out-of-circuit district court granting summary judgment on one claim and dismissing other claims); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1025 n.2 (2d Cir. 1997) (same for dismissal of two defendants for lack of personal jurisdiction); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) (same for dismissal of plaintiff's RICO claims); *Carteret Sav. Bank, F.A. v. Shushan*, 919 F.2d 225, 228 (3d Cir. 1990) (noting that a transfer order based on a finding by the transferor court that it lacked personal jurisdiction could be appealed at the conclusion of the case in the transferee circuit).

In our view, the answer turns on whether the order entered by the transferor court prior to transfer qualifies for an immediate appeal, or if it is a more conventional order that may be appealed only after final judgment. If it is the former, then any appeal must be taken to the court of appeals covering the transferor district; if it is the latter, then the appeal after final judgment will go to

the court of appeals for the district in which the final judgment was entered. Here, that means that we are the proper court of appeals to review the decision of the district court for the Southern District of Indiana to deny preliminary injunctive relief, even though the case was transferred to Georgia a short time later.

## IV

We move to the denial of the injunction. The Joneses show an astonishing lack of interest in that ruling in their briefs. Indeed, one is left with the impression that they are using the fortuity of the denial of the injunction to obtain what they really want, which (at least by page count) is immediate appellate review over the correctness of the district court's decision with respect to the contractual choice of law provision and the subsequent transfer to Georgia. Nowhere in their brief do they review the standards for granting preliminary injunctions, nor do they explain how the district court abused its discretion in applying those standards. Appellate briefs must contain an argument that does more than assert general error. FED. R. APP. P. 28(a)(9)(A); see also *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) (*per curiam*). Claims not properly articulated in a brief are generally deemed waived. InfoCure, however, has addressed the injunction explicitly in one section of its brief (Brief of Appellees at 41-50). Because of this, and because under a generous interpretation of the Joneses' brief they might be arguing that the injunction would have been granted had the court not made these other alleged errors, we will address the court's denial of the preliminary injunction. We review the district court's findings of fact for clear error, its balancing of the factors under an abuse of discretion standard, and its legal

conclusions *de novo*. *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 474 (7th Cir. 2001).

In considering a motion for a preliminary injunction, a district court evaluates whether the moving party has shown (1) a reasonable likelihood of success on the merits of the underlying claim; (2) no adequate remedy at law; and (3) irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If an evaluation of these three points indicates that an injunction might be proper, the court then weighs the potential harms to the parties and takes into account public interest considerations. *PepsiCo., Inc. v. Redmond*, 54 F.3d 1262, 1267 n.3 (7th Cir. 1995).

The district court, after holding a hearing on the Joneses' motion for a preliminary injunction, found that the motion was grounded solely on Count I of the complaint, which charged violations of Indiana's securities law. The other counts requested only money damages by way of relief. Having found that Count I could not survive the motion to dismiss, it accordingly denied the injunction.

The question whether the court correctly dismissed Count I technically goes beyond the scope of this appeal, except insofar as it certainly indicated that the district court thought that the Joneses had a non-existent likelihood of success on the merits of that claim. But we prefer to resolve the question about the injunction on other grounds, and to express no opinion about the applicability of the Indiana securities laws to this case or whether the Joneses had enforceable rights under those laws. Once all claims of all parties have been resolved in Georgia, the parties will have an opportunity to test the correctness of the disposition of Count I on appeal. It is important to recall, in this connection, that under the rule of *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964), the district court in the Northern District of Georgia will be obliged

to follow the same choice of law rules that would have obtained in Indiana, because the basis of this transfer was § 1404(a).

For now, it is enough for us to consider whether the Joneses can show irreparable harm, which is another essential prerequisite for a preliminary injunction. In our view, they cannot. It is now too late in the day for them to seek rescission of the contract, and the only reason they gave for wanting the injunction was to ensure that PRISM remained as valuable as possible should rescission be ordered. Rescission involves a judicial termination of a party's contractual obligations; it is a court-ordered "unwinding" of a contract, with the goal of returning the parties to their positions prior to contracting. This remedy is possible only if such a *status quo ante* can be re-established. How could this be achieved in this case, years after the fact? Rescission is "simply not feasible." *Potomac Elec. Power Co. v. Electric Motor & Supply, Inc.*, 262 F.3d 260, 267 (4th Cir. 2001).

No matter which law applies to this case, the Joneses are in an equally bad position to obtain rescission. Both Georgia and Indiana require that a party seeking rescission promptly request it and behave in a manner consistent with the desired relief. See, *e.g.*, *Owens v. Union City Chrysler-Plymouth, Inc.*, 436 S.E.2d 94, 96 (Ga. Ct. App. 1993); *Griffin v. Axsom*, 525 N.E.2d 346, 347 (Ind. Ct. App. 1988). The record shows that the Joneses did not meet this standard. Shortly after the consummation of the sale, they claimed to have discovered evidence of Info-Cure's fraud and wrongdoing in the transaction. It was not until April 2001, some fifteen months after the deal was closed and long after the stock prices collapsed, that they first advanced their request for rescission. It is impossible now even to conceive of what a return to the *status quo* would entail. PRISM has been merged into the operations of InfoCure; InfoCure has invested in

the development of products compatible with and alternative to those acquired through PRISM. It is unclear whether the Joneses still own all the InfoCure shares they received in the exchange—which they would have to return if rescission were granted. In a word, it is simply not practical or feasible to undo the sale of this particular company almost three years after the close of the deal. And if rescission is unavailable, then there is no ground to enjoin any conduct of InfoCure with respect to PRISM. Money damages, should the Joneses be able to prove that they are entitled to any, will be an adequate remedy.

Because the result with respect to the feasibility of rescission would be the same under Georgia or Indiana law, we see no need to delve into the Joneses' contention that Georgia law ought not to be applied to this case. This also means of course that there is no need to certify any questions to the Indiana Supreme Court, as the Joneses have asked us to do with respect to the choice of law issue.

## V

Recognizing that transfer orders are not ordinarily appealable, the Joneses urge us to review this particular order anyway, by exercising "pendent appellate jurisdiction" over it. Such a jurisdictional doctrine has been recognized in the past; when it is proper to invoke it, it allows a court of appeals to review an otherwise unappealable interlocutory order if it is inextricably intertwined with an appealable one. See *Swint v. Chambers County Comm'n*, 514 U.S. 35, 50-51 (1995); see also 15 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3855, at 474 (2d ed. 1986) ("[I]f there is an interlocutory appeal from the grant or denial of a preliminary injunction, the appellate court has power, if it sees fit, to consider at that time a ruling on a transfer motion."). The Joneses

claim that the issue of transfer was so closely related to the denial of the injunction as to warrant our invocation of this jurisdiction here.

The problem is that the Supreme Court has signaled that the doctrine of pendent appellate jurisdiction rests on shaky grounds. In fact, the Court questioned its very existence in *Swint*, 514 U.S. at 43-51. This court subsequently described it as a "controversial and embattled doctrine" in *United States v. Board of School Comm'rs*, 128 F.3d 507, 510 (7th Cir. 1997), but we have invoked it at least once since *Swint* was decided. In *Greenwell v. Aztar Indiana Gaming Corp.*, 268 F.3d 486, 491 (7th Cir. 2001), we held that the Supreme Court had revived the doctrine in *Clinton v. Jones*, 520 U.S. 681 (1997), where the Court said that "the Court of Appeals correctly found that pendent appellate jurisdiction over this issue was proper." 520 U.S. at 707 n.41. *Cf. Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 770 n.2 (2000). In *Greenwell,* we upheld pendent appellate jurisdiction over a malpractice claim because it was "entwined" with an indemnity claim that was properly before the court. 268 F.3d at 491. On those facts, the exercise of pendent jurisdiction served broader purposes of efficiency and consistent resolution of the case. The *Greenwell* court explained that "since we must decide the latter [indemnity claim], we might as well decide the former at the same time and head off a second appeal—so this is one of those cases in which allowing an interlocutory appeal prevents rather than produces piecemeal appeals, while if the liability and indemnity issues did not overlap there would be only a limited economy from deciding them in one rather than two appeals." *Id*.

The Federal Circuit also exercised pendent appellate jurisdiction in a recent case. In *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1345 (Fed. Cir. 2000), that court exercised "discretion to invoke pendent appellate juris-

diction over the interlocutory grant of summary judgment because it is closely interrelated factually to the preliminary injunction." *Id.* (citations and quotations omitted). It chose to do so because "the district court based its denial of the preliminary injunction request on its summary judgment ruling." *Id.* So here, the Joneses argue, this court should review the dismissal of Count I, because that is really what prompted the denial of the injunction. See also *Midwest Motor Express, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 70 F.3d 1014, 1016 (8th Cir. 1995) (finding the transfer order and the denial of the injunction "inextricably bound up with each other"). See also *Ukiah Adventist Hosp. v. F.T.C.*, 981 F.2d 543, 548 (D.C. Cir. 1992) (review of transfer order available discretionarily when closely related to the injunction).

In our view, however, the Joneses' situation differs significantly from either *Greenwell* or *Helifix*. Practically the entire case is awaiting development before the district court in Georgia. That court will have the power to make all necessary rulings in the case, including (subject to law of the case considerations) entertaining motions to reconsider earlier orders made on the merits. In so doing, as we noted above, it must follow the same substantive law that the Indiana federal court would have used. The only thing our intervention now would accomplish would be the avoidance of general restrictions on interlocutory review of orders disposing of single claims or orders transferring cases under § 1404(a). It would be quite inappropriate for us to open the door to an end-run around these jurisdictional limitations for every case in which a ruling on injunctive relief is subject to interlocutory review. In any event, as *Helifix* acknowledged, pendent appellate jurisdiction is a discretionary doctrine, like its cousin supplemental jurisdiction. See 28 U.S.C. § 1367(c).

Even on the assumption that it would be possible to assert jurisdiction here, we would choose not to do so. In

our view, the preliminary injunction is not sufficiently closely related to the transfer order to warrant the exercise of pendent appellate jurisdiction. While the district court considered the contractual choice of law provision in both of its decisions, the two issues were quite distinct: the transfer hinged on whether a different forum would be better suited to hear the case; the preliminary injunction issue, as discussed above, dealt with the propriety of such an extreme remedy as rescission. The two issues can be resolved without reference to each other.

## VI

The Joneses brought a proper appeal under § 1292(a)(1) from the district court's denial of their requested preliminary injunction, but then they all but abandoned this aspect of the case on appeal and focused instead on the allegedly pendent issues. We find no abuse of discretion in the district court's ruling with respect to the injunction. As for the other issues, we conclude that they are not so closely related to the injunction that they would benefit from review here and now; even if we could review them, we conclude that such review would undermine the general policies forbidding interlocutory review. We are confident that the district court in the Northern District of Georgia will be able to handle the merits of this case, including any remaining choice of law issues or arguments about the applicability of the Indiana securities laws. We therefore AFFIRM the denial of the preliminary injunction, and DISMISS the remainder of the appeal.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*